**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Catherine H. ELLIS, Defendant-
Appellant.**

**No. 81, Docket 25164.**

United States Court of Appeals
Second Circuit.

Argued Jan. 8, 1959.

Decided March 9, 1959.

William Scott Ellis, Asst. U. S. Atty., Southern District of New York, N. Y. (Arthur H. Christy, U. S. Atty., Southern District of New York, New York City, on the brief), for plaintiff-appellee.

Richard Wait, Boston, Mass. (Choate, Hall & Stewart, Boston, Mass., C. Dickerman Williams, Hugh S. Williamson, Wm. I. Stoddard and Maclay, Morgan & Williams, New York City, on the brief), for defendant-appellant.

Before CLARK, Chief Judge, MOORE, Circuit Judge, and GIBSON, District Judge.

MOORE, Circuit Judge.

The United States brought this action to recover from the defendant-taxpayer tax refunds claimed to have been erroneously made by the government to the taxpayer for the years 1944, 1945 and 1946. From the judgment in favor of the government (154 F.Supp. 32) taxpayer appeals. The sole issue is whether the income payments, the taxes on which the government claims were erroneously refunded, were income "in respect of a decedent" and taxable under section 126. If not included within the scope of section 126 but taxable under section 22(a)[1] taxpayer claims she is entitled to a deduction under section 23(l) for exhaustion of property held for the production of income or an exemption under section 22(b) (3) for property acquired by bequest. The district court held that section 126 applied.

Taxpayer is the widow of Alexander Ellis who died in November 1943. Ellis, for many years, had been a partner of Fairfield and Ellis, a Boston insurance brokerage firm. To avoid the necessity of liquidation upon the death or retirement of a partner, the articles of partnership provided that Ellis might designate a "dormant partner" who would become entitled to receive from the partnership net earnings for ten years following Ellis' death an amount equal to one-half of Ellis' pre-death share. Ellis nominated John H. Good as his dormant partner, who, in turn, agreed to pay over this share to the taxpayer. For the first three years following Ellis' death taxpayer included the amounts received in her income tax returns and paid the tax thereon.

In the meantime the Ellis estate tax return came under review. The Commissioner found that no value had been assigned to the right to participate for ten years in the Fairfield and Ellis profits. He determined this right to be worth $221,261.54, taxable in the sum of $57,034.44. This deficiency was paid in April 1947.

Because of this development taxpayer filed claims for a refund of all income taxes paid on the share of the partnership income which she had received for 1944, 1945 and 1946. Her theory was that the moneys really represented a part of Ellis' interest in the firm, i. e., $221,261.54, on which she had paid an estate tax and that there would be no taxable profits until she had received from the partnership more than that amount.

The Commissioner rejected this theory but allowed taxpayer to take an annual credit for each year of one-tenth of the estate tax valuation ($221,261.54) as if it were an asset subject to exhaustion (sections 22(a), 23(l)). On this theory refunds totaling $25,155.09 were made. Thereafter the Commissioner concluded that the refunds had been erroneously made because the partnership payments were "income in respect of a decedent," and governed by section 126, under which deductions could only be based on the estate tax paid on the value of such interest (section 126(c) (1)).

The problem here presented was brought into sharp focus by the Supreme Court's decision in Helvering v. En-

right's Estate, 1941, 312 U.S. 636, 61 S.Ct. 777, 85 L.Ed. 1093, and in tax legislation intended to lessen certain hardships which resulted therefrom (section 126 enacted in 1942). Taxpayer takes the position that section 126 was intended to apply only to payments subsequently received attributable to income accrued up to the date of death. Thus she argues that all other payments which resulted from the partnership business subsequent to Ellis' death must be regarded as income under section 22(a), i. e., "gross income." In effect taxpayer, adhering strictly to the Enright partnership situation, would limit section 126 to such income received in subsequent years as could be shown to have resulted from business on the books at the date of death.

In attempting to find a solution to this problem obviously the mere words "income in respect of a decedent" supply no clue (section 126(a) (1)). However, paragraph (3) is headed "Character of income determined by reference to decedent," and then states that the right described in paragraph (1) shall be treated in the hands of the estate "as if it had been acquired by the estate * * * in the transaction by which the decedent acquired such right"; and the amount shall "have the character which it would have had in the hands of the decedent if the decedent had lived and received such amount." Finally the section provides for a deduction of the estate tax paid on such interest as valued for estate tax purposes. Resolution of the question must therefore be found "in the transaction by which the decedent acquired such right."

 The income of Fairfield & Ellis was derived principally from commissions earned on the sale and renewal of fire, casualty, liability and marine insurance policies. These policies were written usually for three and five years periods. Little capital was needed for this business. Ellis himself had been responsible for a substantial portion of the firm's commission income. The partnership agreement provided for the payment "out of the net gains and profits" to Ellis' dormant partner of "one-half of what would have been his proportion if alive and active" for a period of ten years. During the years in question (1944, 1945, 1946) the partnership share attributable to this dormant partner was deducted from the net profits. No tax thereon was paid by the partnership. From a partnership tax point of view its accounting system and tax return treated the situation as if Ellis (through the dormant partner) were still a partner. The right which decedent acquired had its source exclusively in the contract, which regardless of the dormant partner device, actually preserved Ellis' partnership position intact at a reduced percentage for ten years after his death. This contract did not result from any bargain between the surviving partners and Ellis' estate but stemmed solely from Ellis' efforts and bargaining position during his lifetime. The ten-year partnership extension recognized these services and his dominant position in contrast to three and six years periods for other partners. Furthermore, the income itself was closely related to his services because of the continuity of this type of insurance brokerage business.

The fallacy of taxpayer's arguments may be traced to her attempt to treat the partnership contract as if it were a coupon bond, a royalty contract, a leasehold or a patent. From this assumption she then argues that because of the ten-year limitation annual exhaustion of the asset should be allowed. In other words, taxpayer claims that Ellis' contract was a capital asset having a value of $221,-261.54 which should be treated as a lease or royalty agreement which would become valueless in ten years. This position might have been taken by the Congress but the law as actually passed is section 126.

Subsequent to 1942 the courts have had to construe section 126 particularly with reference to post-death partnership and employee payments (O'Daniel's Estate v. Commissioner, 2 Cir., 1949, 173 F.2d 966; Bausch's Estate v. Commis-

sioner, 2 Cir., 1951, 186 F.2d 313; Commissioner of Internal Revenue v. Oates, 7 Cir., 1953, 207 F.2d 711; Commissioner of Internal Revenue v. Linde, 9 Cir., 1954, 213 F.2d 1, certiorari denied 1954, 348 U.S. 871, 75 S.Ct. 107, 99 L.Ed. 686; Latendresse v. Commissioner, 7 Cir., 1957, 243 F.2d 577, certiorari denied 1957, 355 U.S. 830, 78 S.Ct. 43, 2 L.Ed.2d 43; Riegelman's Estate v. Commissioner, 2 Cir., 1958, 253 F.2d 315).

In O'Daniel's Estate this court held that a bonus payment to a company officer designated and fixed some four months after death came within section 126, and "clearly represented compensation for his services and any right to receive it that was realized by his estate was acquired through him and never arose in any other way or through any other source" (173 F.2d at page 967).

Thereafter the Ninth Circuit in Linde held that section 126 was not restricted to amounts which had accrued prior to death, saying:

"The payments which the taxpayer received in 1945 were realized under and in consequence of contracts and deals made by the decedent in his lifetime. No act or thing taken or performed by the taxpayer operated to procure or to give rise to this payment. Such payments had their source exclusively in the decedent's contract and arrangement with the co-operative associations. And since in his hands had he lived and received these amounts they would have had the character of ordinary income, the quoted provision of subdivision (3) would make it appear that they have the same character, that is, ordinary income, in the hands of this taxpayer who acquired the right to receive that amount by bequest from the decedent within the meaning of subdivision (C) of subparagraph (1) of section 126(a)" (213 F.2d at page 4).

Renewal commissions were the subject of the Seventh Circuit's decision in Latendresse. The court reached the conclusion that the insurance renewal commissions were section 126 income.

Most recently this court in Riegelman's Estate had the question [253 F.2d 318] "whether the post-death partnership income received by Riegelman's estate constitutes 'income in respect of a decedent.'" The facts were most analogous because the partnership agreement there provided for payments on account of work commenced and completed after death. In holding these payments taxable under section 126 the court stated (253 F.2d at page 319):

"The payments were not gifts, nor were they attributable to anything done by Riegelman's estate. They were the fruits of the man's professional activity during his lifetime; and this is so whether the payments are considered to be in the nature of additional compensation for services performed by him during his lifetime or are considered to be in lieu of the chose in action to which his estate would have succeeded in the absence of a specific agreement. See Note, 65 Harv.L.Rev. 1024 (1952)."

Taxpayer suggests that the only issue in Riegelman was whether the value of the right to receive future partnership income should be included in the decedent's gross estate. This was the same question the Commissioner raised when he added $221,261.54 to the Ellis Estate. The portion of the Riegelman opinion dealing with section 126 income is referred to as dictum which should be re-examined. Dictum is usually that portion of an opinion which one party or the other finds adverse to his arguments. It also presupposes that courts have time for extraneous and wholly irrelevant comments unrelated to the point in issue. However, more frequently the pronouncement characterized as dictum rests upon a quite solid foundation. Re-examination leads to the conclusion that the Riegelman "dictum" correctly interpreted the scope of section 126 and that the limitation urged by taxpayer does not reflect either valid statutory construction or congressional intent. The possible

change of attitude of the Internal Revenue Service towards voluntary payments to widows by their deceased husbands' employers does not alter this conclusion.

■■ Finally, taxpayer argues that she is entitled to an exemption under section 22(b) (3) or, in the alternative, an amortization deduction under section 23 (*l*) regardless of whether the income is taxed under section 126. As to exemption "Section 22(b) (3) (excluding from income amounts received by bequest, devise, or inheritance) does not apply to these amounts which are specifically required to be included in income." (Committee on Finance, S.Rep.No.1631, 77th Congress, 2nd Session, pp. 100–102 (1942–2 Cum.Bull. 504, at 580).) The same statement is found in the Report of the Committee on Ways and Means, H. Rep.No. 2333, 77th Congress, 1st Session (1942–2, Cum.Bull. 372, at 436). As to deduction section 126 carries its own deduction provisions and provides for no depreciation allowance.

The judgment of the district court is affirmed.