Louis F. GRILL and Joan Myers Grill, and Joan Myers (Formerly Joan Selznick)

v.

The UNITED STATES.

Florence A. SELZNICK

v.

The UNITED STATES.

Nos. 340–58, 341–58.

United States Court of Claims.
June 6, 1962.

Robert H. Sabel, Pittsburgh, Pa., for plaintiffs.

George Willi, Washington, D. C., with whom was Asst. Atty. Gen. Louis F.

Oberdorfer for defendant. Edward S. Smith and Philip R. Miller, Washington, D. C., were on the brief.

PER CURIAM.

This case was referred pursuant to Rule 45, 28 U.S.C.A. to Wilson Cowen, a trial commissioner of this court, with directions to make findings of fact and recommendations for conclusions of law. The commissioner has done so in a report filed August 25, 1961. Exceptions to the commissioner's findings were taken by the plaintiffs, briefs were filed by both parties and the case was submitted to the court without argument by counsel. Since the court is in agreement with the findings and recommendations of the trial commissioner, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Plaintiffs are therefore not entitled to recover and their petitions will be dismissed.

It is so ordered.

### Opinion of Commissioner

These two suits, which were consolidated for trial, were brought for the refund of Federal income taxes aggregating $70,628.89 paid by the plaintiffs for the calendar years 1949–1953 inclusive. During those years plaintiffs were the current income beneficiaries of a testamentary trust established under the will of Myron Selznick, deceased. The income here involved consisted of annual sums received by the plaintiffs as a portion of the net rental proceeds of the distribution of the well-known motion picture "Gone With the Wind," and the issue to be decided by the court is whether the Commissioner of Internal Revenue properly determined that such annual receipts were taxable as ordinary income rather than as capital gain.

Selznick International Pictures was organized in 1935 and produced a number of motion pictures. Prior to the actual production of "Gone With the Wind" and in accordance with the custom in the industry, Selznick International entered into a financing and distribution agreement with Loew's Inc. Under the terms of this contract, the pertinent provisions of which are summarized in finding 4, Loew's agreed to advance approximately one-half of the production costs, plus specified amounts for advertising and promotion, and in return therefor received exclusive rights to the worldwide distribution, sale, and exploitation of the picture for a period of 7 years following the delivery of the photoplay. It was agreed that after the parties had recovered all their advances and production costs, the first 20 percent of the net proceeds of distribution would be payable to Loew's as a distribution fee and the remaining 80 percent would be divided equally between Loew's and Selznick International.

"Gone With the Wind" was first released in December of 1939. Effective August 24, 1942, near the end of the first domestic run of the picture, Selznick International was completely liquidated and undivided interests in all of its assets were distributed to its stockholders in accordance with a ruling made by the Commissioner of Internal Revenue, upon application of the corporation and its stockholders, to the effect that the liquidation was a complete liquidation within the meaning of section 115(c) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 115(c) and that each stockholder would be taxable at capital gain rates upon the difference between his tax basis for the stock and the fair market value of the assets received in exchange therefor.

In exchange for his 239/3528 stock interest, Myron Selznick received an undivided fractional interest in the assets, including a 6.774376 percent interest in "Gone With the Wind" and in the distribution contract of August 25, 1938. In his Federal income tax return for the year of liquidation, Mr. Selznick valued that interest at $78,151.08.

The initial release of "Gone With the Wind" covered the period December 1939–1942. During the fiscal years ending August 31, 1940–August 31, 1942, the gross proceeds of distribution received by Loew's totaled $21,230,000, of

which more than $13,000,000 was received during the first of such fiscal years.

Upon the death of Myron Selznick on March 23, 1944, his fractional interest in "Gone With the Wind" and in the distribution contract passed under his will to his testamentary trust of which plaintiffs were the income beneficiaries.

The executors of Mr. Selznick's estate filed an estate tax return in which they valued his fractional interest in "Gone With the Wind" at the sum of $176,133.-78 as of the date of his death. This valuation was accepted by the Internal Revenue Service upon audit of the return. Prior to 1949, the payments received by the trust from Loew's under the distribution contract exceeded $176,133.78. For Federal income tax purposes, the receipts to the extent of that amount were treated as a return of capital as to which no gain or loss was realized, but the excess was reported as ordinary income.

Between 1944 and 1957, the trustees of Mr. Selznick's trust received from Loew's under the distribution contract and distributed to plaintiffs a total of $902,635.94. For each of the years in suit, except 1950, plaintiffs included the amounts so received in their gross income for Federal income tax purposes and paid taxes thereon at ordinary income rates. The receipts for 1950 were reported as long-term capital gains, but this treatment was disallowed by the Commissioner of Internal Revenue and deficiencies were assessed against and paid by the plaintiffs for that year. Plaintiffs filed timely claims for refund on the ground that the proceeds they received from distribution of "Gone With the Wind" should have been treated as long-term capital gains and, upon rejection of their claims, they instituted these actions.

Since the provisions of the Internal Revenue Code granting preferential capital gain treatment have always been narrowly construed, plaintiffs at the outset must show that the income in issue resulted from the sale or exchange of a capital asset.

It is clear that, in entering into the contract of August 25, 1938, with Loew's, Selznick International did not divest itself of its ownership in "Gone With the Wind." At the end of the 7-year period following the delivery of the film, Loew's was obligated to reconvey to Selznick International all but 25 percent of Loew's property rights in it. Selznick International was thereupon entitled to sell the entire property but was required to pay Loew's 25 percent of the proceeds of sale. In return for its control over distribution of the motion picture, Loew's agreed to remit a portion of the proceeds of distribution as rent or royalty and, when Selznick International was liquidated, one of the assets which Myron Selznick received in exchange for the stock was the right to receive a pro rata share of the rents or royalties to be paid by Loew's. Mr. Selznick never disposed of his interest and, upon his death, the ownership thereof vested in his testamentary trust. Therefore, if the interest he received in "Gone With the Wind" and in the Loew's contract had a fair market value on the date of liquidation, the distribution to him resulted in a long-term capital gain in the difference between the cost basis of his stock and the fair market value of the assets he received. Under such circumstances, the liquidation in 1942 became a closed transaction and the rentals or royalties thereafter paid by Loew's in excess of the fair market value of Mr. Selznick's interest at the time of liquidation would be taxable as ordinary income, whether received by him or by plaintiffs. Osenbach v. Commissioner, 4 Cir., 198 F. 2d 235; Gersten v. Commissioner, 9 Cir., 267 F.2d 195; Chamberlin v. Commissioner, 7 Cir., 286 F.2d 850; O'Brien v. Commissioner, 25 T.C. 376. In an effort to avoid the effect of these decisions, plaintiffs have invoked the "open transaction" theory by contending that Mr. Selznick's interest had no ascertainable fair market value at the time the corporation was liquidated and that the rentals thereafter paid by Loew's are to be treated as capital gain. Plaintiffs rely upon such cases as Burnet v. Logan, 283 U.S.

404, 51 S.Ct. 550, 75 L.Ed. 1143; Commissioner v. Carter, 2 Cir., 170 F.2d 911, and Lentz v. Commissioner, 28 T.C. 1157.

Plaintiffs have cited no case which holds that an interest in a motion picture, including a right to receive a part of the proceeds of distribution, is insusceptible of valuation. There are, of course, many cases in which contracts providing for indefinite or contingent future payments have been valued for tax purposes. Among these are several cases in which the market value of producers' interests in contracts that entitled them to receive proceeds of the future distribution of motion pictures has been established. O'Brien v. Commissioner, supra (an interest in the motion picture "The Secret Command"); Lewin v. Westover, 45 A.F.T.R. 944 (interests in the motion pictures "The Moon and Sixpence" and "So Ends Our Night"), and Herbert v. Riddell, D.C., 103 F.Supp. 369 (an interest in "Kiss and Tell").

The only evidence offered by plaintiffs to overcome the presumptively correct valuation made by the Commissioner of Internal Revenue as of August 1942, was that, during the première of "Gone With the Wind" in New York City, it was acclaimed by at least two of the critics as an outstanding motion picture and was very well received by the public; that it has been successfully reissued three times since 1948, and that it has earned an unusually large sum of money (more than any other picture distributed by Loew's) between the date of its initial release in December 1939 and April 1960. Not only does this evidence fail to show that Mr. Selznick's interest was insusceptible of valuation in the 1942–44 period, but a conclusion to the contrary is clearly established by facts adduced by the defendant. These facts, which are undisputed, show that the fair market value of the asset in question was, in fact, determined on several occasions in the 1942–1944 period by persons who were connected with the motion picture industry and were presumably in a better position than anyone else to make that determination.

It is a known and normal procedure in the motion picture industry to place valuations on producers' interests in motion pictures for both tax and nontax purposes. The distributor makes the valuation during the current run of the picture by estimating future earnings from the remainder of the first run and the period of time in which such earnings will be realized. The resulting figure is then discounted to arrive at the present value of the estimated income. While this procedure is not mathematically exact, it is regularly employed and relied upon in the industry and is accepted by the Internal Revenue Service in valuing interests in motion pictures. As shown in the findings of fact, a number of major motion pictures have been valued in this manner.

■ Moreover, Mr. Selznick himself valued his interest in the film and in the Loew's contract at $78,151.08 in his income tax return for the year 1942. It is a fair assumption that when he made this valuation, he was aware of the favorable reception which the critics and the public had accorded to "Gone With the Wind" and of the total gross receipts which Loew's had received in the distribution of the picture from the time of its release to August 31, 1942. Since there is no other evidence in the record as to the value as of August 24, 1942, I have found that the value determined by him represents the fair market value of his interest on the date stated. It is well settled that the valuation of an asset by a taxpayer in his tax return is an admission against interest which, in the absence of other impugning evidence, may be resorted to for determining market value. O'Brien v. Commissioner, supra; Estate of Marsack v. Commissioner, 7 Cir., 288 F.2d 533; Campagna v. United States (C.A.2d), 290 F.2d 682 (1961–1 U.S.T.C., Par. 9458.)

■ Finally, in the latter part of 1943 and about 4 months prior to the death of Mr. Selznick, Loew's purchased from seven of the ten former stockholders of Selznick International their undivided

interests in the film at a uniform price of $26,000 per percentage point of interest owned. In this way, Loew's acquired ownership of approximately 86.90 percent of the property. As the distributor of the picture, Loew's was unquestionably an informed purchaser, and it would be difficult to find more persuasive proof of market value than these arms-length transactions which were completed about midway between the first and second releases of "Gone With the Wind." In Mr. Selznick's estate tax return, the executors of his estate also valued his interest at the time of his death at $26,000 per percentage point of interest. Consequently, I have found that the market value of Mr. Selznick's interest at the time of his death was $176,133.78.

Plaintiffs' evidence regarding the successful reissues of the film in 1948 and thereafter, and the total gross rentals received by Loew's up to the year 1960 is entitled to very little weight in resolving the issue because, as stated in Bader v. United States, D.C., 172 F.Supp. 833, the valuation for income tax purposes must be made as of the relevant date without regard to events occurring subsequently. Perhaps the most that such evidence proves is that neither Mr. Selznick nor the seven individuals who sold their interests to Loew's in 1943 could foresee that this motion picture would be successfully reissued three more times.

In the light of the facts which have been found, plaintiffs' position on the question of market value is not supported by Burnet v. Logan, supra, nor by the other cases of the same import which have been cited in plaintiffs' brief.

Even if it were conceded that the income involved here would have been subject to capital gains treatment had the income been received by Myron Selznick during his lifetime, the concession would not aid plaintiffs. Neither the testamentary trustees nor plaintiffs have ever sold or exchanged any interest in "Gone With the Wind." Since their receipt of the income derives from property acquired by

bequest or devise, such income must be considered as ordinary income in the absence of some statutory provision to the contrary. Helvering v. William Flaccus Oak Leather Co., 313 U.S. 247, 61 S.Ct. 878, 85 L.Ed. 1310.

Faced with this formidable obstacle, plaintiffs have asserted that the income in question may well be "income in respect to a decedent" within the meaning of section 126 of the 1939 Internal Revenue Code, 26 U.S.C. (I.R.C. 1939) § 126 (1952 ed.), which has the general effect of treating certain types of income in the hands of a decedent's estate or his heirs in the same way as such income would have been treated in the hands of the decedent had he lived, collected, and accounted for that income. The purposes for which this statute was enacted and the general principles to be followed in its application are discussed at some length by this court in Estate of Davison v. United States, Ct.Cl., 292 F. 2d 937, and will not be repeated here. As the court there stated, to constitute income with respect to a decedent, the income must have accrued to or have been earned by the taxpayer during his lifetime, although the actual receipt of the income or the determination of the amount thereof is postponed until after his death.

A factual situation, closely analogous to the facts presented here, is covered by Rev.Rul. 60–227, 60–1 Cum.Bull. 262. Although the ruling construes 26 U.S.C. (I.R.C.1954) § 691(a) (1952 ed. supp. III), the provisions of section 691(a) are, in essential respects, identical to those of section 126 of the 1939 code. Advice was requested with respect to a deceased inventor who, during his lifetime, had entered into nonexclusive licensing arrangements to manufacture and sell articles under his patent in return for the payment of royalties. The Internal Revenue Service ruled that royalty payments made after the inventor's death and attributable to sales concluded by the licensees after his death could not be considered as income in respect of a decedent but were items of ordinary in-

come, since the decedent had not sold the patent and therefore had not earned the payments during his lifetime. It is my opinion that the ruling is a correct exposition of the law in the circumstances and that the income received by plaintiffs during the taxable years covered by these suits was not income in respect of a decedent within the meaning of section 126. All of such income was received by plaintiffs as a result of rentals earned and received by Loew's in 1948 or thereafter. No portion of such income had accrued to or had been earned by Mr. Selznick before his death.

 Plaintiffs also rely on Arrowsmith v. Commissioner, 344 U.S. 6, 73 S. Ct. 71, 97 L.Ed. 6. In that case the former stockholders of a liquidated corporation were required to satisfy a judgment against the corporation about 4 years after the liquidation had been completed. They had previously reported and paid taxes on the profits realized from the liquidation as capital gain. In resolving the question as to the treatment of the loss sustained by the taxpayers through the subsequent monetary adjustment, the Supreme Court held that the nature of the loss must be determined by referring back to the original liquidation proceeding. The stockholders, in effect, were required to return a portion of the assets received by them and the Court held that since the original distribution of assets was a capital transaction, the return of assets resulted in a capital loss. In the instant cases, there has been no subsequent adjustment of the terms or the effect of the liquidation proceedings as between Selznick International and Myron Selznick. Also, there is nothing in the record to indicate that there have been any changes in the terms of the distribution contract entered into with Loew's which has continued to pay the rentals required by the provisions of that contract without dispute. In my opinion, the principle announced in Arrowsmith is inapplicable to these cases and affords no basis for relief to plaintiffs. No cases have been cited by the parties, nor have any been found in which the principle has

been applied for the purpose of characterizing the nature of a subsequent gain. Moreover, there is no indication in any of the decisions that the principle may be applied to treat unforeseen increases in annual receipts from income-producing property as capital gains, where such property was distributed on the liquidation of a corporation but not thereafter sold or exchanged. Under circumstances quite similar to those affecting plaintiffs, it has recently been held that Arrowsmith is inapplicable. Campagna v. United States, supra.

For the reasons stated above, the court should deny plaintiffs refunds of the taxes in these suits.