Evelyn Z. LEVIN, Executrix, Plaintiff, Appellant,

v.

UNITED STATES of America, Defendant, Appellee.

No. 6783.

United States Court of Appeals First Circuit.

Jan. 23, 1967.

Rehearing Denied Feb. 27, 1967.

David Burstein, Boston, Mass., with whom Hale & Dorr, Boston, Mass., was on the brief, for appellant.

Loring W. Post, Atty., Dept. of Justice, with whom Richard C. Pugh, Acting Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner and Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., Paul F. Markham, U. S. Atty., Boston, Mass., and Joseph A. Lena, Asst. U. S. Atty., Boston, Mass., with him on the brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This appeal raises the question whether, if the fair market value of a mortgage note at the time of the mortgagee's death is greater than the amount of unpaid principal, the mortgagee's estate, after including the fair market value in the gross estate upon which the federal estate tax is paid, may treat that value as its presumptive basis and treat as taxable income only the difference between the total amount thereafter received in payment and that basis. Although the case actually involves several notes with varying terms and a determination of income tax over three years, the issues are best understood by reference to a single hypothetical note; we shall adopt here the figures stated in the parties' stipulation to the district court.

The plaintiff is the executrix of the mortgagee's estate. Before his death the mortgagee was in the business of lending money on notes secured by real estate mortgages. In a typical transaction, he would lend $8,000 in return for a note in the face amount of $10,000 plus 6 per cent interest, payable over four years. As he received payments on account of face (i. e., excluding the 6 per cent interest), he allocated 80 per cent of each to principal and 20 per cent to discount income, reporting the latter as income in the year paid. For his own purposes he recorded the discount as accruing (i e., having been earned by him) in equal installments each year, regardless of whether the whole amount accrued was paid. When he died at the end of the second year he had been paid $4,000 on the face of the note, of which $800 (20 per cent) was allocated to discount income and $3,200 (80 per cent) to principal; at that time the total discount income accrued was $1,000. In summary, the state of the account was:

*Principal:*

| | | |
|---|---|---|
| Original principal advanced | $8,000 | |
| Less: principal paid | 3,200 | |
| *Balance of principal due* | | $4,800 |

*Discount:*

| | | |
|---|---|---|
| Discount earned (½ of $2,000) | 1,000 | |
| Less: Discount paid | 800 | |
| *Total discount earned but unpaid* | | 200 |
| *Unearned discount* (½ of $2,000) | | 1,000 |
| *Unpaid balance on note* (exclusive of stated 6 per cent interest) | | $6,000 |

In her federal estate tax return the plaintiff valued the note at the balance due of $6,000, less 7 per cent,[1] or $5,580.

Thereafter the note was paid in full to the estate, and plaintiff reported the amount of $1,200 attributable to "discount" as income in respect of a decedent, taxable to the estate under section 691 of the Internal Revenue Code.[2] In due course she filed this suit for refund, claiming that only the $200 of discount earned but unpaid at the date of death constituted income in respect of a decedent, and that the rest was income to the estate only to the extent that it exceeded the estate's basis. The district court found for the government, ruling that all payments attributable to discount, earned or unearned, constituted income in respect of a decedent. We reverse.

The history and purposes of section 691 have been discussed at length elsewhere. It is sufficient here to note the basic distinction embodied in the authorities. On the one hand, as the cases cited by the district court show,[3] income in respect of a decedent includes payments attributable to the decedent's activities—such as personal services, sales, deferred-compensation contracts, or investment income accruing before death—even though he may not have had the right to payment before his death. On the other, it does not include payments in the nature of return after the date of death on property passing to the estate—such as rents under a lease, royalties on a patent assignment, or interest on a coupon bond. See, e. g., United States v. Ellis, 2 Cir., 1959, 264 F.2d 325, 327 (dictum); Rev.Rul. 60-227, 1960-1 Cum. Bull. 262. The unearned discount here clearly falls within the latter class. There is no dispute that the earned discount ($200) falls within the former.

Indeed, the government now concedes that the district court erred, but would support its result on the ground that the unearned discount is "more clearly taxable under Section 61 [26 U.S.C. § 61(a) (4)] as interest earned by the estate * * *." Although this proposition is not necessarily wrong as a general principle, it cannot be supported on the facts of this case.

"[T]he basis of property in the hands of a person acquiring the property from a decedent * * * [is] the fair market value of the property at the date of the decedent's death * * *." 26 U.S.C. § 1014(a). Similarly, the value of property included in the gross estate is its fair market value at the time of death. 26 U.S.C. § 2031; Treas.Reg. § 20.2031-1

---

1. The reason for and significance of the 7% discount are elaborated below.

2. 26 U.S.C. § 691(a) (1):
   "The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death * * * shall be included in the gross income, for the taxable year when received, of:
   "(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent * * *."

3. United States v. Ellis, 2 Cir., 1959, 264 F. 2d 325 (decedent's share of partnership income derived from sale and renewal of insurance policies); Estate of Riegelman v. Commissioner of Internal Revenue, 2 Cir., 1958, 253 F.2d 315 (decedent's share of law partnership income derived from work done after his death; characterized as either "additional compensation for services performed by him during his lifetime or * * * in lieu of the chose in action to which his estate would have succeeded in the absence of a specific agreement"); Commissioner of Internal Revenue v. Linde, 9 Cir., 1954, 213 F.2d 1, cert. denied, 348 U.S. 871, 75 S.Ct. 107, 99 L.Ed. 686 (decedent's share of pooled proceeds from sale of grapes by marketing association); Bernard v. United States, S.D.N.Y., 1963, 215 F.Supp. 256 (deferred compensation for decedent's personal services under employment contract); Estate of Davison v. United States, 1961, 292 F.2d 937, 155 Ct.Cl. 290, cert. denied, 368 U.S. 939, 82 S.Ct. 380, 7 L.Ed.2d 337 (crop rents on lease of decedent's land; earned before death, although amount not ascertainable until sale after death).
   In one case cited by the district court, Grill v. United States, 1962, 303 F.2d 922, 157 Ct.Cl. 804, income from rental of a motion picture was held *not* to be income in respect of a decedent, since no portion had accrued to or been earned by the decedent before his death.

(b) (1958). Taken together, the sections express Congress's intent that unrealized gain taxed to the decedent's estate at his death shall not be subjected to another tax when it is subsequently realized by the estate or a legatee. In short, we read the statute as declaring that the estate shall be treated for income tax purposes as if it had purchased the property from the decedent at the date of his death, except for that part that represents income in respect of a decedent.[4]

■ Because of this correlation, the value declared and accepted on the estate tax return presumptively establishes the value under section 1014. Treas.Reg. § 1.1014–3 (1957). See, e. g., McMillan v. United States, S.D.W.Va., 1964, 64–2 U.S. Tax Cas. 93836; Rev.Rul. 54–97, 1954 Cum.Bull. 113. Plaintiff correctly relies upon this rule here, because the only evidence of fair market value is that reported on the estate tax return.

In fact, a common method of valuing income-producing property for which there is no quoted market price is to project the total amount to be received and discount it by some amount representing an acceptable rate of compensation for the postponement of receipt. In the case of a mortgage note the rate usually reflects a judgment as to its security, as to the probability of realizing the whole amount as it comes due. Thus,

a note which bears a high rate of interest when it is obtained may be discounted at a lower rate (i. e., a higher present value) in the hands of a subsequent purchaser if it appears that the debtor is responsible and the security is unimpaired. That, we think, is precisely what the plaintiff contends is the case here.

At the decedent's death his estate acquired a note ostensibly calling for payment of $6,000 in principal and 6 per cent interest. In fact, it was the equivalent of one calling for $4,800 in principal and some greater rate of interest. By valuing the note at $5,580,[5] rather than $4,800, plaintiff in effect asserted that its actual rate of interest was unusually high for notes of like quality at the time, and that the ordinary purchaser would be willing to pay more than the remaining principal (i. e., to accept a lower rate of return on his investment than the seller had been getting).[6]

Whether this assertion is correct as a matter of objective fact we cannot tell; but it is not inherently unreasonable, and it was not disputed when it was first raised. The government concedes that the valuation was appropriate, and asks us to hold it improper as a measure of the estate's basis under section 1014 solely on the ground that unaccrued discount is not properly includible in the gross estate. The lone authority is Treas.Reg. § 20.-2031–4 (1958), which provides that "the

---

4. Section 1014(c) provides that the general basis rule shall not apply to "property which constitutes a right to receive an item of income in respect of a decedent under section 691"—that is, that the whole amount of income in respect of a decedent (in this case, the $200 of earned but unpaid discount) is to be taxed as income, even though it was included in the value of the gross estate. To avoid double taxation, section 691(c) provides a deduction for the amount of estate tax attributable to the inclusion of the income in the gross estate.

5. That plaintiff arrived at this figure by deducting 7% from the ostensible face value of $6,000, rather than by adding a premium to the balance of $4,800, is of no consequence in this case. What is important here is that the reported value was higher than the remaining principal.

6. To clarify this point, assume that the note is paid in a lump sum two years after the date of death. The full amount paid would be $6,000 + (6% × 2) = $6,720. In the hands of the decedent, $4,800 of this amount would have been return of investment and $1,520 would be income, so the note would have borne interest at the real rate of 16% per annum.

Under plaintiff's view, however, ($6,000 − 7%) = $5,580 would be return of investment and $1,140 would be income, resulting in a rate of 10% per annum.

The question which figure better represents the fair market value of the note, then, resolves to whether 16% or 10% more accurately reflects the rate of return acceptable on the market for a note of the kind involved.

fair market value of notes, secured or unsecured, is presumed to be the amount of unpaid principal, plus interest accrued to the date of death, unless the executor establishes that the value is lower or that the notes are worthless." We agree that it is a fair reading to define "principal" as the amount paid by the decedent, regardless of the face amount, and "interest" as including discount. But we cannot find the regulation conclusive here because (a) it is an estate tax regulation, designed to prevent under-valuation of the gross estate, and (b) as a corollary, it establishes a presumption of minimum, not maximum, value.

██ We find nothing else in the code or the regulations to support the government's position, and our analysis of fair market value indicates that it often includes items that would have been income to the decedent if he had lived to earn them.[7] Under the circumstances we see no reason not to accept the estate tax valuation as a measure of the plaintiff's basis for income tax purposes.[8]

█ Assuming the value given in the estate tax return to be correct, the estate is thus in the position of a purchaser who has paid $5,380 for an income-producing asset whose net redemption value, so far as true principal is concerned, will be $4,800. The estate is entitled, under section 167, to amortize this "premium" over the useful life of the asset and deduct the amounts so amortized. Cf. Rev.Rul. 258, 1953–2 Cum.Bull. 143. Thus the estate's net taxable income from this note should consist only of payments in excess of $5,380.

Judgment will be entered vacating the judgment of the district court and remanding the case for further proceedings not inconsistent with this opinion.

## ON PETITION FOR REHEARING

### PER CURIAM.

█ The government now argues that, since the estate is entitled to calculate its basis as if it had purchased the note for its fair market value at the date of the decedent's death, the decedent should be treated as having sold the note then, thus realizing income to the extent that the "selling price" exceeded his basis. But in this context "purchase" is merely metaphor, describing in more familiar terms the effect on the estate of the special basis rule of section 1014. No section of the Code requires hypostasis of the metaphor to justify treating the sequence of death and inheritance as if it were in all respects a sale.

Petition denied.

---

7. To give a more familiar analogy: suppose the property involved were common stock rather than a mortgage note, and the stock had appreciated in value between the date of its acquisition by the decedent and the date of death. There could be no doubt that the estate's basis under section 1014 would include the amount of the appreciation; that amount would have been a taxable gain rather than return of investment to the decedent if he had realized it during his life. The effect of section 1014 is that the amount of appreciation is taxed at estate tax rates rather than at capital gains or ordinary income rates. No different situation obtains here.

8. One adjustment is required by section 1014(c), since the estate tax value of $5,-580 includes $200 of income in respect of a decedent. The proper method is to deduct the full amount from the stated value, leaving the estate with an income tax basis of $5,380. Thus, on the hypothetical note the total taxable income exclusive of income in respect of a decedent is $6,720 — $5,380 = $1,340.

Of course, these figures are not based on any real note in the case; nor do we warrant the accuracy of our arithmetic in arriving at them. The parties have stipulated that upon a decision for the plaintiff they will attempt to agree upon the amount of refund for which judgment should be entered. We wish them godspeed.