Fred M. WARING and Virginia Waring,
Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE.

No. 17550.

United States Court of Appeals
Third Circuit.

Argued June 6, 1969.

Decided June 26, 1969.

A. Walter Socolow, New York City
(Harvey R. Kitay, Max Lynne, New
York City, on the brief), for appellants.

Lester B. Snyder, Atty., Dept. of Justice, Tax Division, Washington, D. C.
(Johnnie M. Walters, Asst. Atty. Gen.,
Lee A. Jackson, Meyer Rothwacks,
Attys., Dept. of Justice, Washington,
D. C., on the brief), for appellee.

Before KALODNER, FREEDMAN
and SEITZ, Circuit Judges.

OPINION OF THE COURT

PER CURIAM.

Fred M. Waring [1] attacks the decision
of the Tax Court that royalties he received in 1960 and 1961 under a trademark and trade name license agreement
were taxable to him as ordinary income
and not as capital gains.

In 1946 taxpayer's wholly owned corporation was liquidated and its assets
were distributed to him in exchange for
all the stock of the corporation. Included in the assets which taxpayer received in liquidation was a 1944 license
agreement between the corporation and
a third party to whom was given the
right to use the name "Waring" in connection with the sale of electric blenders in return for royalties payable to

[1] The case concerns the business activity
of Fred M. Waring. His wife is a party
because she and her husband filed a
joint return.

the licensor. In taxpayer's income tax return for 1946 he reported the receipt of $300,000. on the liquidation of the corporation, from which he deducted $92,-979., the basis of his stock, with a net capital gain of $207,021.

Taxpayer received royalties under the license agreement, which by the end of 1952 amounted to $300,000. He treated these royalties as a return of capital and reported no gain or loss on them. In 1960 he received $17,022. and in 1961 $15,270. as royalties. These he reported as long term capital gains. The Commissioner determined that they constituted ordinary income. This determination was sustained by the Tax Court. Tax Court Memo 1968–126 (1968).

Taxpayer urges that the stated valuation of $300,000. was mistakenly made in the 1946 tax return and that in fact the license agreement had no ascertainable fair market value at the time of the liquidation of the corporation. As a result he claims that the royalties he received in 1960 and 1961 are taxable only as capital gains.

■ It is well established that where the fair market value of property received by the stockholder in exchange for his stock cannot be ascertained, the original transaction is considered open and later payments are treated as capital gains, as they would have been if received at the time of the liquidation. See Burnet v. Logan, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143 (1931); Westover v. Smith, 173 F.2d 90 (9 Cir. 1949); Commissioner of Internal Revenue v. Carter, 170 F.2d 911 (2 Cir. 1948). However, it is only in rare and exceptional circumstances that property received in a transaction will be held to have no ascertainable fair market value. Slater v. Commissioner of Internal Revenue, 356 F.2d 668 (10 Cir. 1966); Rev. Rul. 58–402, 1958–2 Cum.Bull. 15.

■ Confronting us is the factual issue whether the license agreement which

taxpayer received on the liquidation of the corporation had an ascertainable fair market value. One of the important elements of evidence before the Tax Court was the fact that taxpayer's accountant, who had been an officer of the corporation and active in its affairs, valued the assets of the corporation transferred in liquidation[2] at $300,000. and reported this valuation in taxpayer's return for 1946. The Tax Court heard his testimony, including his explanation for valuing the assets at $300,000. The valuation given in the return was an admission, and although it is not conclusive, the Tax Court was entitled to judge its weight as evidence. See e. g., Grill v. United States, 303 F.2d 922, 157 Ct.Cl. 804 (1962); Campagna v. United States, 290 F.2d 682 (2 Cir. 1961); Marsack's Estate v. Commissioner of Internal Revenue, 288 F.2d 533 (7 Cir. 1961). Furthermore, the license agreement itself prescribed minimum guarantee royalty payments totalling $145,000. Presumably these figures represent a business judgment of the minimum potential market for blenders in the post-war period based upon the sales history of blenders in five pre-war years, and an estimate of the goodwill represented by the trademark and trade name "Waring Blender."

■ The burden rested on the taxpayer to prove that the value of the license agreement could not be determined. On the evidence presented, the Tax Court's finding that the license agreement had an ascertainable fair market value is not clearly erroneous. Whatever persuasiveness taxpayer's argument may have and the credibility of his accountant's explanation for the valuation of $300,000. reported in the 1946 tax return, are matters which properly were addressed to the Tax Court, but which do not demonstrate on this appeal that the Tax Court committed error.

The decision of the Tax Court will be affirmed.

---

2. The parties stipulated that the transferred assets other than the license agreement were "insignificant."