BANK OF THE WEST, TRUSTEE, EXECUTOR AND FIDUCIARY OF THE ESTATE OF GEORGE W. MILIAS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 23220-88.        Filed October 11, 1989.

*Gary S. Vandeweghe,* for the petitioner.
*Andrew D. Weiss,* for the respondent.

OPINION

FEATHERSTON, *Judge:* Respondent has determined that petitioner is liable as trustee, executor, and fiduciary for the following amounts related to the estate tax of the Estate of George W. Milias, deceased:

| | |
|---|---|
| Estate tax liability | $79,180.14 |
| Sec. 6651(a)(1) [1] addition to tax | 4,851.72 |
| Sec. 6651(a)(2) addition to tax | 24,268.61 |
| Interest | 116,907.74 |
| Total | 225,208.21 |

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect as of the date of decedent's death.

The principal substantive issue for decision is the fair market value at decedent's death of his interest in two pieces of real property located in Santa Clara County, California. In addition, there are issues as to petitioner's liability for additions to tax under section 6651(a)(1) and (2). No issue has been raised as to the statutory interest included in the assessed liabilities except that its amount depends upon the amount of the estate tax found to be owing.

## Basic Facts

All of the facts are stipulated.

George W. Milias (hereinafter decedent) died on October 1, 1977, leaving a will naming the First National Bank of San Jose, California, as executor of his estate. The bank later changed its name to Bank of the West and it is hereinafter referred to as petitioner. Petitioner served as executor through the close of the probate of the estate.

After having obtained two extensions of time for filing an estate tax return, petitioner filed an untimely estate tax return on January 22, 1979, showing a tax liability of $102,356. On the return, petitioner reported fractional interests in real estate having a total value of $447,879.47 together with other assets. Relevant to the issues here presented are (1) a fractional (1/8) interest in 4,286 acres in Santa Clara County known as the Milias Ranch and shown to have a value of $191,562, and (2) a fractional (1/8) interest in 299 acres in Santa Clara County known as Bloomfield Road and shown to have a value of $217,500, a total of $409,062. These two Santa Clara County properties together are sometimes referred to as the Milias Ranch.

The estate tax return was accompanied by a payment of $10,235.60, representing 10 percent of the estate tax reported to be due. The letter accompanying the return contained the following paragraph:

As referenced above, this estate consists primarily of unimproved real property and there is at present insufficient cash with which to satisfy the estate tax liability. I therefore request approval to pay the tax due in ten annual installments, the first of which is attached.

Also attached to the estate tax return was decedent's will which made certain specific bequests to his wife, Mary Ann Milias (Mrs. Milias), and left the residue of his estate in trust to the First National Bank of San Jose. The trustee (later Bank of the West, petitioner) was directed to pay the entire net income to Mrs. Milias for her life. The trustee was authorized, if it deemed the income insufficient, to make such payments to Mrs. Milias out of principal as it deemed necessary for her proper support, care, and maintenance. The trustee was further authorized to pay Mrs. Milias out of principal such amounts as she might request, not to exceed the greater of $5,000 per annum or 5 percent of the value of the trust determined at the end of the calendar year. On the death of Mrs. Milias, the trustee was directed to distribute the trust estate to decedent's sister, Carol Silacci (Mrs. Silacci), free of trust. The will contained other directions to be followed if Mrs. Silacci predeceased Mrs. Milias.

An amended estate tax return was signed on July 11, 1979, and received in the Fresno Service Center of the Internal Revenue Service on July 17, 1979. On this amended return, petitioner showed that no tax was due and claimed a refund of $17,854.30 of prior estate tax payments based on an attempted section 2032A special use valuation election for the two Santa Clara County properties (the Milias Ranch). The notice of election attached to the return again shows the fair market value at decedent's death of the two properties as $191,562 and $217,500, respectively, for a total fair market value of $409,062. The parties now agree that the attempted special use valuation was ineffectual.

On December 19, 1980, petitioner, as seller, and Donald Silacci and Carol Silacci, as buyers, entered into a contract, subject to stated conditions, to sell to the Silaccis Mrs. Milias' life interest in the two Santa Clara County properties (the Milias Ranch). One condition stated in the agreement is as follows:

3. WHEREAS, Seller is desirous of selling to Buyers, and Buyers are desirous of purchasing from Seller, Seller's life estate interest in the above described property, and Buyers, their issue, successors and assigns, are willing to transfer, waive and release their remainder interest

in the property held by Seller in order to effectuate a transfer of the entire fee interest of said property to Buyers, and Buyers are further willing to transfer and waive all right, title and interest in the estate of GEORGE W. MILIAS and agree to waive any right, title and interest as beneficiary, either vested, contingent, or as a remainderman in any trust created by the Will of GEORGE W. MILIAS, deceased.

The buyers agreed to pay to the seller $150,000 in cash upon the transfer of record title into the buyers' name. The agreement further provided:

> Should Buyers sell or transfer any portion of the above property at any time during the lifetime of MARY ANN MILIAS, then Seller shall be entitled to a portion of the sales price as follows: for purposes of this computation only, the property has been assigned a present value of $240.00 per acre for all land except that land commonly known as "Bloomfield" which has been assigned a value of $1,200.00 per acre. Each year an increase of 8% of these amounts will be allowed for normal appreciation. If the sale price received exceeds the base value plus the 8% compunded [sic] appreciation amount, then Seller shall be entitled to that percentage owned by GEORGE W. MILIAS, deceased, in said parcel or parcels sold, of the excess amount less a reduction for the fact that Seller owns only a life interest in said real property, said reduction to be computed under the 6% life tables of the Internal Revenue Service.

The buyers agreed to pay the California inheritance tax, and to cooperate in terminating the life estate and "in transferring their remainder interest in the property, as well as in the estate of GEORGE W. MILIAS and any trust created under the Will of GEORGE W. MILIAS to MARY ANN MILIAS." The parties further agreed "to execute all legal documents necessary to carry out both the terms and intent of this agreement."

Petitioner filed in the Superior Court of California, Santa Clara County, a Return of Sale of Real Property and Petition for Order Confirming Sale. In that petition, petitioner reported that the trust's life interest in the property was sold for $150,000 plus an additional sum of $4,240.36 which represented the inheritance taxes on the remainderman's portion of the ranch. The petition stated that "Said sale was made to CAROL SILACCI on the condition that she waive her right to the remainder interest in decedent's trust created under his Will." The petition added: "Filed herein is the appraisal by Beverly Canali, the duly appointed State Inheritance Tax Referee in this

matter. Said appraisal by said Referee is for the sum of $150,000.00." The appraisal consisted of a form stating that the total appraised value of the life estate was $150,000, without any supporting facts or explanation of the reasoning or legal standards employed in arriving at that figure. The sale was confirmed by the Superior Court by order dated June 1, 1981.

On October 14, 1981, petitioner filed in the Superior Court a second and final account requesting an order authorizing the payment of executor and attorneys' fees and the final distribution of the estate, reserving $15,000 for the payment of any unpaid estate taxes. On October 29, 1981, the Superior Court entered an order authorizing the payment of fees and the final distribution of the estate.

On June 15, 1988, the Commissioner mailed to petitioner a notice of liability for an assessment in the amounts set forth above plus interest as provided by law. The notice stated that the assessment "constitutes your personal liability as fiduciary for the estate tax due from the estate of George W. Milias, deceased * * * ."

## Controlling Statutes

Section 2002 provides the general rule that the estate tax "shall be paid by the executor." An executor may become personally liable for the estate tax by distributing the assets of the estate without paying the tax. Section 3713(b) of title 31 of the United States Code (1982) is as follows:

(b) A representative of a person or an estate (except a trustee acting under title 11) paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government.

Section 6901(a)(1)(B) provides a method for the collection of such liability as follows:

SEC. 6901(a). METHOD OF COLLECTION.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:

*    *    *    *    *    *    *

(B) FIDUCIARIES.—The liability of a fiduciary under section 3713(b) of title 31, United States Code in respect of the payment of any * * * [estate tax] from the estate of the taxpayer, the decedent, or the donor, as the case may be.

As used in section 3713(b) of title 31 of the United States Code, the term "debt" includes a beneficiary's distributive share of an estate and the term "claims of the Government" includes an estate's Federal tax liability. *Viles v. Commissioner,* 233 F.2d 376, 379-380 (6th Cir. 1956), affg. a Memorandum Opinion of this Court. The purpose of the provision "is to make those into whose hands control and possession of the debtor's assets are placed, responsible for seeing that the Government's priority is paid." *King v. United States,* 379 U.S. 329, 337 (1964); *United States v. Crocker,* 313 F.2d 946, 948 (9th Cir. 1963).

Respondent argues and petitioner "does not contest that the Petitioner bears the burden of proof as to tax and penalties * * * , that the Petitioner's liability arises as a fiduciary, and that the amount distributed in the Milias Estate exceeds the amounts at issue herein." Further, petitioner "does not here defend on the basis of the statute of limitations." Petitioner does not contend that respondent should pursue claims against the distributees of the estate before charging it with liability.

### Value of the Milias Ranch

Petitioner contends that decedent's interest in the Milias Ranch (i.e., the two Santa Clara County properties) had a fair market value of $224,800.85 rather than the fair market value of $409,062 reported on the original and amended estate tax returns. Petitioner argues that the life interest of Mrs. Milias was sold to Mrs. Silacci in an arm's-length transaction in December 1980 for a total of $154,240.36, including the inheritance tax. According to section 20.2031-10(c), Estate Tax Regs., the value of a life estate (such as the one held for Mrs. Milias) for a female aged 56 (Mrs. Milias' age at time of sale) is .68612 times the total value of the property. Under the formula of the regulation, the entire value of decedent's interest in the Milias Ranch at decedent's death (the life interest plus the remainder interest), petitioner maintains, is mathematically calculable to have

been $224,800.85. On this ground, petitioner argues that the estate tax liability should be reduced accordingly. Respondent contends that petitioner has not carried its burden of proving that the $409,062 value shown on the original estate tax return was erroneous.

A partial interest in property, such as a life interest, does not necessarily have a fair market value equal to a corresponding mathematically calculated fraction of the fair market value of the whole property. See *Propstra v. United States,* 680 F.2d 1248 (9th Cir. 1982); *Estate of Bright v. United States,* 658 F.2d 999 (5th Cir. 1981) (en banc). Even assuming that petitioner's valuation method is acceptable, however, we do not think the evidence of the alleged sale of Mrs. Milias' life interest in the Santa Clara County properties (the Milias Ranch) to Mrs. Silacci is sufficient to establish a prima facie case that the properties had a total value of only $224,800.85. Both the original and amended estate tax returns state that decedent's interest in the two properties had a total fair market value of $409,062. In weighing the evidence, these admissions, which are unexplained, must be taken into account. *Waring v. Commissioner,* 412 F.2d 800, 801 (3d Cir. 1969), affg. a Memorandum Opinion of this Court; *Grill v. United States,* 157 Ct. Cl. 804, 811, 303 F.2d 922, 926 (1962); *Campagna v. United States,* 290 F.2d 682, 684 (2d Cir. 1961).

The record shows that these valuations in the two estate tax returns were not made casually. The original return was accompanied by a letter which attempted to justify its tardiness on the ground that certain real property "was valued incorrectly by the Inheritance Tax Referee." In the amended return, petitioner attempted to make a concededly untimely election to value decedent's Milias Ranch properties under the special use valuation provisions of section 2032A. Preparation of the amended return required a direct focus on the fair market value as well as the special use value of the disputed properties.

Consistent with the admission in the two estate tax returns that the two properties had a value of $409,062, petitioner's final account filed in the probate court on October 14, 1981, requested authority to distribute the remainder interest in the Milias Ranch (the two Santa Clara

County properties) to Mrs. Silacci. The final account placed a value of $259,062 on that remainder interest. Decedent's interest in these properties, of course, included the life interest as well as the remainder interest. This $259,062 value assigned to the remainder interest plus the $150,000 allegedly paid for Mrs. Milias' life interest (not taking into account the inheritance tax of $4,240.36) equals the total value of $409,062 shown in the original estate tax return as the value for decedent's entire interest in the two Santa Clara County properties comprising the Milias Ranch. This admission as to value also remains unexplained.

Moreover, more than 3 years elapsed between the date of decedent's death on October 1, 1977, and the date of the alleged sale on December 19, 1980. The record contains no information on the purposes for which the Santa Clara County properties were used at or after decedent's death, no physical description of the properties, no information on sales of comparable properties, and no facts or opinion indicating whether the property's value increased, decreased, or remained the same during the 3-year period. The sale was made to decedent's sister, a family member, and the record contains no evidence on why the sale was made. The only evidence dealing with the question whether the sale was made at arm's length is a letter dated January 15, 1981, addressed to a State Inheritance Tax Referee by one of petitioner's attorneys in which it is stated that the sale had been made "after almost one year of negotiations * * * ;" the letter adds, "I would, therefore, request an appraisal at $150,000.00." The Referee complied with the request. We do not think the alleged sale of the life interest to a family member 3 years after decedent's death is a reliable indicator of the value of decedent's interest in the property at decedent's death.

Even if the sale was an arm's-length transaction, it sheds little light on the value of the Santa Clara County properties at decedent's death for yet another reason. The transaction was not simply a sale of the life interest for $150,000. In addition to paying the $150,000 for Mrs. Milias' life interest in the properties, Mrs. Silacci also relinquished her remainder interest in the rest of decedent's

estate. We have no evidence of the value of the remainder interest in such property when she relinquished it.

Finally, unexplained is the provision in the sale agreement, quoted above, entitling petitioner as trustee to share in the proceeds of the sale of the properties at any time during the lifetime of Mrs. Milias. No facts are shown to support the values of $1,200 per acre for the Bloomfield tract and $240 per acre for the land other than the Bloomfield property.

In a very real sense, the alleged sale of the life estate in the Milias Ranch was not a sale at all but a division of decedent's estate. True, Mrs. Silacci paid the $150,000 and petitioner released Mrs. Milias' life interest in the real estate. However, Mrs. Silacci also released her remainder interest in the rest of the estate. Under the settlement, Mrs. Milias no longer had the right to have the Milias Ranch as part of the estate used under decedent's will for her care, maintenance, and support or used to pay her each year the greater of $5,000 or 5 percent of the value of the estate at the end of the calendar year. However, Mrs. Milias will be entitled to share during her lifetime in the proceeds of the sale of the Milias Ranch at prices for the two tracts in excess of the amounts set forth in the agreement. With these complex provisions in the agreement, the cash consideration of $150,000 provides no guidance as to the value of the life estate in the Milias Ranch.

The most reliable guide to the value of the Milias Ranch is the fair market value used in the original and amended estate tax returns and in the final account petitioner filed with the Superior Court, i.e., $409,062. We find that the properties had a fair market value in that amount at decedent's death. Petitioner has not shown any error in respondent's determination that the unpaid estate tax liability as of June 9, 1988, was $79,180.14.

## Failure to File a Timely Estate Tax Return

As indicated above, the estate tax here in dispute is not a determined deficiency but the unpaid balance of the tax reported on the original return. Because the additions to tax under section 6651(a)(1) (for failure to file a timely return) and (a)(2) (for failure timely to pay the tax) were not

attributable to a deficiency, respondent was authorized under section 6662(b) to assess them without complying with the deficiency procedures. *Knoefler v. Schneider,* 565 F.2d 1072, 1074 (9th Cir. 1977); see *Koch v. Alexander,* 561 F.2d 1115 (4th Cir. 1977). The notice of liability indicates that the section 6651(a)(1) and (2) additions to tax have been assessed. Liability under section 3713(b) of title 31 of the United States Code includes additions to tax as well as the taxes themselves. See *Price v. United States,* 269 U.S. 492, 501 (1926); *Spokane County v. United States,* 279 U.S. 80, 93 (1929); *United States v. Rome,* 414 F. Supp. 517, 518 (D. Mass. 1976).

As to petitioner's liability under section 6651(a)(1), that section provides for the imposition of an addition to tax for failure to file a timely estate tax return unless "it is shown that such failure is due to reasonable cause and not due to willful neglect * * * ." As the legal standard for reasonable cause, the regulations call on taxpayers to show that they used "ordinary business care and prudence." Sec. 301.6651-1(c)(1)and(2), Proced. & Admin. Regs. Willful neglect is defined to mean a conscious, intentional failure or reckless indifference. *United States v. Boyle,* 469 U.S. 241 (1985).

The estate tax return in this case was due nine months after decedent's death. Sec. 6075(a). As executor, petitioner obtained two extensions of time for filing a return and, when finally filed, the return was untimely (by 19 or 22 days, according to petitioner). Petitioner's only excuse for the delinquency, asserted on brief without supporting evidence other than the letter transmitting the return, was that a valuation by an Inheritance Tax Referee had to be revised. This excuse does not show why it took almost 2 years to obtain an appraisal, what was wrong with the appraiser's first report, or any other evidence justifying the delinquency in filing the return. If the appraisal was deficient, petitioner as executor could have filed a return "on the best information available" and later amended the return if necessary. *Estate of Vriniotis v. Commissioner,* 79 T.C. 298, 311 (1982).

Petitioner argues that its acts regarding the late filing should be tested as of 1988 when the notice of liability was issued. Section 6018(a), however, flatly declares that the

executor shall make an estate tax return. Section 6075(a) provides that returns made under section 6018(a) (relating to estate taxes) shall be filed within 9 months after the date of the decedent's death. Petitioner admits that the return, filed after two extensions, was untimely. This delinquency authorized the Commissioner to assess the addition to tax pursuant to section 6662(b). The Commissioner made the assessment of the addition to tax against the estate and has here asserted that petitioner is liable as fiduciary for that assessment. Petitioner has cited, and we know of no rule of law, keying the section 6651(a)(1) addition to tax to any date other than the prescribed date for filing a return. Petitioner is liable for the addition to tax.

### *Failure to Pay the Tax on Time*

Section 6651(a)(2) provides for the imposition of an addition to tax for failure "to pay the amount shown as tax on any [estate tax] return" on or before the date prescribed for the payment of such tax "unless it is shown that such failure is due to reasonable cause and not due to willful neglect * * * ." The added amount is 0.5 percent per month, not exceeding 25 percent in the aggregate. Again, the legal standard for determining reasonable cause is ordinary business care and prudence.

To establish reasonable cause for failing to pay the tax on time, petitioner points out that the original estate tax return was filed in January 1979 showing a tax of $102,356, accompanied by the $10,235.60 payment "under I.R.C. sec. 6166." In July 1979, petitioner filed the amended return claiming the section 2032A special use valuation for much of the property in decedent's estate. Without any explanatory evidence, the parties have stipulated a copy of a letter dated October 17, 1983, from an Assistant United States Attorney to an Internal Revenue Service official, referring to an action by petitioner in the United States District Court for the Northern District of California and including the following:

An issue has arisen subsequent to the closing of this case in our office concerning the fair market value of the ranch on the date of death. It would be appreciated if you would take the opportunity to review the valuation of the ranch to ascertain its propriety.

On brief petitioner asserts that "almost nothing" happened between October 17, 1983, the date of the letter, and June 1988, when the notice of liability was issued. Petitioner cites those facts to show that it was not satisfied with its original $409,062 value of the Milias Ranch and that it did not want to pay the tax until the value was settled.

We hold for respondent on this issue. The addition to tax under section 6651(a)(2) applies in the case of failure to pay the amount "shown as tax on any return." Petitioner does not challenge the correctness of the determination that $79,180.14 of the amount of tax shown on the estate tax return remains unpaid. Nor does petitioner challenge the correctness of the amount of the $24,268.61 addition to tax, absent a showing of reasonable cause for failure to pay the amount shown on the return.

The facts cited by petitioner do not, in our view, show reasonable cause for failure to pay the amount shown on the estate tax return. First, as to petitioner's request under section 6166 to pay the tax in installments, section 6166(d) provides that any election under that section "shall be made not later than the time prescribed by section 6075(a) for filing the return of tax imposed by section 2001 (including extensions thereof) * * * ." Petitioner concedes that the estate tax return was not timely filed; therefore, the purported election to pay the tax in installments was ineffectual as a matter of law.

For another reason the purported section 6166 election was defective. Section 6166 authorizes the installment election only if a major part of the estate consists of an "interest in a closely held business." The letter accompanying the return states that "the major asset of the estate consists of basically only an undivided 1/8 interest in several parcels of unimproved real property" which was located in California. The estate tax return shows that decedent was domiciled in Alexandria, Virginia, at his death and was an administrator in the United States Department of the Interior. There is no evidence that decedent's interest in the real property was an interest in a closely held business. Nor is there any evidence of any action by the Internal Revenue Service exercising its discretion to permit the payment of the tax in installments.

Similarly, the purported section 2032A special use valuation election was a nullity. Section 2032A(d)(1), in the form in which it was in effect when the estate tax return was due, provides that the election "shall be made not later than the time prescribed by section 6075(a) for filing the return of tax imposed by section 2001 (including extensions thereof) * * * ." Petitioner did not attempt to make the section 2032A election until July 17, 1979, nearly six months after the delinquent original tax return was filed. Filing an amended return in which an obviously tardy election was attempted does not provide reasonable cause for delaying the payment of the tax shown on a return.

Finally, the Assistant United States Attorney's letter dated October 17, 1983, stating that it "would be appreciated" if the Internal Revenue Service official handling the case "would take the opportunity to review the valuation of the ranch" does not justify the failure to pay the tax shown on the return filed over 4 years earlier. The stipulations of facts contain no explanation of the circumstances in which the letter was written or the authority of the Assistant United States Attorney in the matter. The letter states that a case involving petitioner had been closed in the United States Attorney's office; that office thus had no further jurisdiction over the case. Moreover, the letter does not indicate whether the writer thought the reported value was too high or too low, or whether he had any knowledge at all about the value of the property. The letter did not provide reasonable cause for petitioner's failure to pay the tax shown on the return.

For the sake of completeness, we add that it has long been held that in order to render a fiduciary liable under 31 U.S.C. sec. 3713(b), the fiduciary must be chargeable with knowledge or notice of the debt due the United States at a time when the estate had sufficient assets from which to pay the debt. *Leigh v. Commissioner,* 72 T.C. 1105, 1109, 1112-1113 (1979); *New v. Commissioner,* 48 T.C. 671 (1967). Petitioner was executor of the estate and was charged with the duty of filing a return and paying the estate tax. Petitioner had knowledge of the unpaid tax, the delinquent filing of the estate tax return, and the failure to pay the tax shown on the return. Quite obviously, petitioner was in

possession of such facts that a faithful and fair discharge of its duty would have put it on inquiry. *New v. Commissioner,* 48 T.C. at 677-678.

*Decision will be entered for the respondent.*