**Birt E. SLATER and Eleanor Slater, Petitioners,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 8093.**

United States Court of Appeals
Tenth Circuit.

Jan. 31, 1966.

Dale E. Anderson, Salt Lake City, Utah (Sanford M. Stoddard and Fabian & Clendenin, Salt Lake City, Utah, with him on brief), for petitioners.

Robert A. Bernstein, Washington, D. C. (Richard M. Roberts, Meyer Rothwacks and I. Henry Kutz, Washington, D. C., with him on brief), for respondent.

Before MURRAH, Chief Judge, and BREITENSTEIN and SETH, Circuit Judges.

MURRAH, Chief Judge.

By this appeal we are asked to review a decision of the Tax Court to the effect that patent royalties received by the taxpayer for 1954–55–56 were ordinary income, not capital gains as contended by the taxpayers.

The question is presented on agreed facts. The husband taxpayer[1] and two others organized Good, Inc., for the purpose of acquiring from a patentee the exclusive right to manufacture, use and sell his patented article. Each of the incorporators paid in $1,300 in cash and was issued one share of the company's stock. No other stock was issued. The corporation contracted with the patentee to pay a royalty of five cents per unit with a yearly minimum of $5,000. After some investigation concerning the feasibility of manufacturing and selling the patented article, it was decided to grant an exclusive license to another corporation. This license agreement of June, 1953, provided for the payment of a royalty of ten cents per unit or a minimum of $10,000 per annum payable in monthly installments of $416.67 to the corporation and a like amount to the patentee commencing July 1, 1953. The agreement was cancellable by either party on ninety days written notice. In the same year the shareholders adopted a plan of complete liquidation, intended to comply with § 112(b) (7), Internal Revenue Code of 1939, and the petitioner filed his election prescribed by § 112(b) (7) (D) within thirty days of the adoption of the plan of liquidation. During the taxable year and in accordance with the plan, the corporation distributed all of its assets consisting of cash and the license agreements with the patentee and the licensee. Petitioner received $500 in cash and an undivided one-third interest in the license agreements.

In his election as a shareholder petitioner reported that "The value of Taxpayer's interest in this asset is believed to be not more than $416.67 or the assured right to ⅓ of ½ of the royalty for a period of 90 days." And, in their tax return for the taxable year 1953 petitioners reported the amount of $416.67 plus $500 received in cash for a total amount of $916.67, which when subtracted from the basis of petitioners' stock in the amount of $1,300 disclosed a non-recognized loss on liquidation of $383.33.

Thereafter taxpayer received royalties for his ⅓ interest in the license agreements in the amounts of $5,805.66, $4,733.41 and $5,621.38 for the years 1954–55–56, respectively, which he returned as long term capital gain. The Commissioner determined that the royalty payments were ordinary income and assessed a deficiency accordingly.

Here, as in the Tax Court, it seems to be agreed that a § 112(b) (7) (D) liquidation and distribution results in a non-recognized capital gain or loss in the year of liquidation measured by the difference between shareholder's basis in his stock and the value of the assets he received. The liquidation and distribution results in immediate tax consequences, and if the property distributed to the shareholder is susceptible of fair market value, the transaction is closed for tax purposes, and the treatment of receipts from subsequent transactions with respect to the property must rest upon their own tax footing depending upon their nature. It seems also to be agreed, at least for the purposes of this case, that if the distributed rights in the patent-license agreements were

---

1. The wife is a party to the action only because she and her husband filed joint returns for the years involved.

**670**

insusceptible of determination of fair market value, the transaction remained open until all receipts from the properties were recovered, and such receipts were taxable in the year received by taxpayers as capital gains. The question of whether the distributed assets were susceptible of determination of fair market value is usually one of fact. See Campagna v. United States, 2 Cir., 290 F.2d 682, and cases cited.

Proceeding on this premise, the Tax Court found from the testimony of expert witnesses that upon distribution the license agreement in question had an ascertainable market value of at least $416.67, the value accorded it by taxpayers as one-third of the assured value of the license agreement.

If the Tax Court's findings on this point are not clearly erroneous, its judgment must be affirmed, unless as taxpayer alternatively contends, he, as distributee, stepped into the shoes of the liquidated corporation under § 112(b) (7) so that the receipts from the license agreement retained their capital gains character in the hands of the stockholders.

As we have seen, the taxpayers agree that the contract right in question had a fair market value of " * * * not less than $416.67 * * * ", but they suggest that minimum value is not fair market value and that the evidence is, therefore, wholly insufficient to support the findings of the Tax Court to the effect that the distributed right was susceptible of determination of fair market value. They point to the amounts received for the taxable years in question as irrefutable evidence that the value of the rights is greater than the $416.67.

■ The fallacy of this argument lies in a long-standing regulation that amounts received in exchange for stock in liquidation of a corporation must be valued for federal income tax purposes except in rare and extraordinary cases,[2]

and judicial recognition that there is nothing about a license agreement of this nature " * * * which makes it impossible to value the rights received thereunder. Patents frequently have been valued for tax purposes." The burden is upon the taxpayers, not the Commissioner, to prove that the distributed assets were insusceptible of fair market value determination. See Chamberlin v. C. I. R., 32 T.C. 1098, 1106, affd. 7 Cir., 286 F.2d 850, 853; Marsack's Estate v. C. I. R., 7 Cir., 288 F.2d 533, 535.

■ It was "abundantly clear" to the Tax Court from the testimony of " * * expert witnesses that it is a common business practice to evaluate * * * patents prior to production on the basis of a complete market survey and other pertinent information." From this the Tax Court concluded that the distributed rights in question had an " * * * ascertainable fair market value at the time of its distribution." These findings are binding here. See Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218.

■ On the question of the effect of § 112(b) (7) on the distribution, it is sufficient to note, as the Tax Court held, that § 112(b) (7) applies to non-recognized gain, not to losses as in our case. See Treasury Regulation 118, Section 39.112(b) (7)–2, 4. Inasmuch as petitioners' return disclosed the realization of a loss from the liquidation instead of gain, § 112(b) (7) is inapplicable, and the loss so reported must be recognized at the time of distribution. Thus, we have no occasion to decide whether the income for the taxable years in question would have been capital gains in the hands of the corporation, and if so, whether the taxpayer distributee can ignore the corporate entity and stand in the corporate shoes after a liquidating distribution.

Judgment is affirmed.

2. Article 561, Treasury Regulations 74 and 77; Article 111–1, Treasury Regulations 86, 94 and 101; Section 19.111–1, Treasury Regulations 103; Section 29.111–1, Treasury Regulations 111 and Section 39.111–1, Treasury Regulations 118.