GARY HOFFMAN and SONIA HOFFMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ALBERT LANDRY and BONNIE LANDRY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hoffman v. Commissioner
Docket Nos. 26345-83; 16898-85.
United States Tax Court
T.C. Memo 1989-154; 1989 Tax Ct. Memo LEXIS 154; 57 T.C.M. (CCH) 51; T.C.M. (RIA) 89154; April 10, 1989. *155 Frederick R. Schumacher and A. Clifton Hodges, for the petitioners. Jeffrey Wong, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: By notice of deficiency dated March 11, 1985, respondent determined a deficiency in petitioners Albert and Bonnie Landry's Federal income tax in the amount of $ 1,163,544 and an addition to tax under section 6653(a) [1] in the amount of $ 58,177 for taxable year 1979. By notice of deficiency dated June 14, 1983, respondent determined a deficiency in petitioners Gary and Sonia Hoffman's Federal income tax in the amount of $ 1,134,048 for taxable year 1979. After concessions, the issues for our consideration in these consolidated cases are: (1) whether petitioners, as shareholders of Snomark, Inc., a Subchapter S corporation, are required to include in income their proportionate shares of three short-term negotiable notes and three long-term non-negotiable notes received by Snomark, Inc. *156 , during taxable year 1979; (2) whether petitioners were entitled to claim deductions for their proportionate shares of "commission expenses" paid by Snomark, Inc., during taxable year 1979; (3) whether petitioners Albert and Bonnie Landry properly claimed deductions with respect to their investment in Federal Investments Partnership, a limited partnership; and (4) whether petitioners Albert and Bonnie Landry are liable for an addition to tax pursuant to section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulated facts and attached exhibits are incorporated herein by this reference. Petitioners were all residents of California when they timely filed their petitions herein. Albert Landry (Landry), Gary Hoffman (Hoffman) and James S. Jones (Jones) were equal shareholders in Snomark, Inc. (Snomark), a California corporation formed in the spring of 1979. Jones was the motivating force behind the formation of the corporation. Snomark properly elected Subchapter S treatment. Snomark was organized for the limited purpose of purchasing and reselling security devices to protect skis and skiing equipment from theft. Snomark purchased *157 locking stations, in which skiers could secure their skis while not in use, and locker openings, in which skiers could secure other skiing equipment, from the manufacturer, Ski B, Inc. (Ski B), a California corporation. In July 1979, Snomark purchased 15,062 new and used locking stations for $ 611,893.75 and 5,105 new and used locker openings for $ 306,300. In November of 1979, Snomark purchased an additional 20,640 locking stations and 8,875 locker openings for $ 838,500 and $ 532,500, respectively. In 1979, Snomark also purchased 520 "Hot Foot" devices (boot warmers), which blow hot air into a skier's boots to warm them, for $ 260,000. Prior to Snomark's purchase of the lockers and the locker openings, Jones organized and was sole general partner of two limited partnerships, Mountain Security, Ltd. (Mountain Security) and Winter-Lock, Ltd. (Winter-Lock) formed to purchase the lockers and locker openings from Snomark. In 1980, Jones left these limited partnerships and was replaced as general partner by National Management Services (National Management). Neither Hoffman nor Landry were partners in Mountain Security and Winter-Lock. Snomark and Jones received $ 468,500 and $ *158 216,500, respectively, as commissions in connection with the organization, syndication, and solicitation of investors for Winter-Lock and Mountain Security. In 1979, Snomark sold all the equipment purchased from Ski B to the partnerships and to Clifford and Donna Losh (the Loshes), individual investors. Winter-Lock purchased 15,062 locking stations and 5,105 locker openings at $ 2,118,093.70 and $ 781,065, respectively. Winter-Lock paid $ 1,013,159 in cash and executed a negotiable promissory note due February 15, 1980, for $ 150,000 (the short-term note) and a non-negotiable 20-year promissory note for $ 1,736,000 (the long-term note). In 1979 Snomark sold Mountain Security 20,640 locking stations and 8875 locker openings for $ 4,349,125. Mountain Security paid $ 1,723,000 in cash and executed a negotiable promissory note due February 15, 1980, for $ 208,250 (the short-term note) and a non-negotiable 20-year promissory note for $ 2,417,875 (the long-term note). In addition, Snomark sold 52 of the 520 boot warmers to the Loshes for $ 102,700. The Loshes paid $ 36,500 in cash and executed a negotiable promissory note due February 15, 1980, for $ 9,000 (the short-term note) and *159 a non-negotiable 20-year promissory note for $ 57,200 (the long-term note). Snomark received all the proceeds from the short-term negotiable promissory notes, when payment was due. The non-negotiable 20-year notes (the long-term notes) executed by the limited partners in Winter-Lock and Mountain Security were identical. Payment was due on February 15, 1999, and interest on the principal amount was to accrue at 7 percent per annum for the first 4 years and at 10 percent per annum thereafter. Although the notes were full recourse as to principal, the holder of the note was required to foreclose on the collateral, upon default, before approaching the limited partners. The limited partners would not be personally liable for a default in the payment of interest. The 13 limited partners in Winter-Lock and the 30 limited partners in Mountain Security each executed an assumption agreement making him or her personally liable for a proportionate share of any unpaid partnership liabilities owed to Snomark. The terms of the Snomark's sales to Winter-Lock, Mountain Security and the Loshes provided that the purchased equipment would be placed in service at various ski resorts in the United *160 States and Canada. Snomark never took physical possession of the equipment. Ski B was hired to install, service and maintain the purchased equipment. By 1982 it became clear that the equipment sold by Snomark to Winter-Lock and Mountain Security was of poor quality. Furthermore, the partnerships were dissatisfied with Ski B's management services. None of the partners in Winter-Lock or Mountain Security received any income from the lockers or the locking stations during the year in issue, although the Loshes did receive income from the rental of the boot warmers. In 1981 and 1982, the limited partners in Winter-Lock and Mountain Security loaned an additional $ 66,000 to their respective partnerships to fund the repair of the equipment purchased from Snomark. The schedule of income and losses for both partnerships during the years 1980 through 1986 is: Fiscal Year
Partnership Receipts
Partnership Income [2]
1980/1981
$ 204,954.48
$ 204,954.48
1981/1982
269,036.50
294,384.53
1982/1983
275,413.41
294,921.79
1983/1984
320,774.60
363,521.25
1984/1985
354,932.66
385,047.45
1985/1986
335,694.12
346,536.57
*161 The individual partners each sustained profits and losses during those years in the following amounts: a loss of $ 21,418.63 in 1980/1981, a loss of $ 85,560.03 in 1981/1982, a loss of $ 79,285.32 in 1982/1983, a loss of $ 10,586.96 in 1983/1984, a profit of $ 61,483.20 in 1984/1985 and a profit of $ 91,174.55 in 1985/1986. In 1982, the California Franchise Tax Board, the State's income taxing authority, commenced an audit of Winter-Lock and Mountain Security. One of the issues considered was whether the long-term notes executed by Winter-Lock and Mountain Security to Snomark should be included in the limited partners' basis. To assist in that audit, Hoffman and Landry submitted affidavits swearing that they intended to enforce the notes and for Snomark to be paid in full for the value of the long-term notes. In its Federal income tax return filed for tax year 1979, Snomark, using the cash basis method of accounting, included in gross income only the cash payments received from Winter-Lock, Mountain Security and the Loshes, and not the value of any of the promissory notes. On that same *162 return Snomark claimed deductions for the "commissions paid" in connection with the organization of Winter-Lock and Mountain Security. Although Snomark continued in business until 1982, it failed to file tax returns after 1979. OPINION The first issue for our consideration is whether petitioners, as shareholders in Snomark, are required to use the accrual method of reporting and to include in income for taxable year 1979 the face value of the short-term promissory notes and the long-term promissory notes which Snomark received from Mountain Security, Winter-Lock and the Loshes. Section 446 provides that taxable income is to be computed under the taxpayer's normal method of accounting unless that method does not clearly reflect income, in which event taxable income is to be computed under such method as, in the opinion of the Commissioner, does clearly reflect income. Sec. 446(a) and (b). Section 1.446-1(c)(2), Income Tax Regs., states that where "it is necessary to use an inventory the accrual method of accounting must be used with regard to purchases and sales." This principle has been consistently upheld by this Court. See Niles Bement Pond Co. v. United States,281 U.S. 357, 360 (1930); *163 Estate of Iverson v. Commissioner,255 F.2d 1, 2-5 (8th Cir. 1958), affg. 27 T.C. 786 (1957), cert. denied 358 U.S. 893 (1958); Caldwell v. Commissioner,202 F.2d 112, 114 (2d Cir. 1953), affg. a Memorandum Opinion of this Court. Section 1.471-1, Income Tax Regs., states that "In order to reflect taxable income correctly, inventories at the beginning and end of each taxable year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor." Although Snomark did not engage in manufacturing, all of its income was related to the purchase and sale of the locking stations, locker openings and boot warmers. Merchandise has been interpreted to mean goods held for sale including "goods awaiting sale" and "goods purchased in a condition for sale." Wilkinson-Beane, Inc. v. Commissioner,420 F.2d 352, 354-355 (1st Cir. 1970), affg. a Memorandum Opinion of this Court. Snomark's locking stations, locker openings, and boot warmers fit this definition. Petitioners argue that Snomark never owned any inventory because at the time title passed to Snomark from Ski *164 B the equipment had not yet been manufactured. Rather, petitioners maintain they purchased an interest in a lease which they then sold to Winter-Lock, Mountain Security and the Loshes. We conclude that this argument is without merit. All of the documents introduced refer to the equipment as the substance of the agreement between Snomark and the partnerships or the Loshes. Equipment, not leases, is the subject of the purchase and sale agreements. An accrual method taxpayer must include income in the year in which all events have occurred fixing his right to the income where the amount thereof can be determined with reasonable accuracy. Sec. 1.451-1(a), Income Tax Regs; Commissioner v. Hansen,360 U.S. 446, 463-464 (1959); Spring City Foundry Co. v. Commissioner,292 U.S. 182, 184-185 (1934). The courts have long recognized an exception to this rule under which a taxpayer is not required to accrue income where the income is of doubtful collectibility or it is reasonably certain that it will not be collected. H. Liebes and Co. v. Commissioner,90 F.2d 932 (9th Cir. 1937), affg. 34 B.T.A. 677 (1936); Corn Exchange Bank v. United States,37 F.2d 34 (2d Cir. 1930); *165 Harmont Plaza, Inc. v. Commissioner,64 T.C. 632, 649-650 (1975), affd. 549 F.2d 414 (6th Cir. 1977), cert. denied 434 U.S. 955 (1977). The doubtfulness of collectibility must be greater than the mere possibility that the debtor will default on the note. First Savings and Loan Association v. Commissioner,40 T.C. 474, 487 (1963). Additionally, mere financial difficulty of the debtor and the fact that a lapse of time is contemplated before the satisfaction of the debt does not constitute sufficiently doubtful collectibility. Commercial Solvents Corp. v. Commissioner,42 T.C. 455 (1964). Furthermore, the principle of doubtful collectibility is only an exception and as such must not be allowed to overwhelm the fundamental rule requiring a taxpayer to accrue the right to the income. Georgia School-Book Depository, Inc. v. Commissioner,1 T.C. 463, 469 (1943). Petitioners argue that the entire transaction in which Snomark purchased the equipment and then, in turn, sold it to Winter-Lock and Mountain Security had no economic substance and was not motivated by a business purpose. [3] Petitioners *166 maintain that the limited partners were interested exclusively in tax savings whose benefits will expire before the end of the 20-year term. Therefore, petitioners maintain, the long-term promissory notes will never be paid. The burden of proof is on petitioners to show that there was reasonable doubt as to the collectibility at the time the right to the income arose. Jones Lumber Co. v. Commissioner,404 F.2d 764, 766-767 (6th Cir. 1968), affg. a Memorandum Opinion of this Court. Petitioners never discussed the doubtful collectibility of the short-term notes issued to Snomark by Winter-Lock, Mountain Security and the Loshes on brief or at trial. The short-term notes were full recourse and paid in full at maturity. Because petitioners have apparently declined to address the doubtful collectibility *167 of the short-term notes and raise no other arguments to respondent's determinations with respect to the short-term notes, we conclude that the short-term notes were properly includable in Snomark's income in 1979, the year of receipt. A promissory note which does not give rise to genuine indebtedness can have no tax effect. Knetsch v. United States,364 U.S. 361 (1960). A nonrecourse note may support a bona fide debt obligation. Mayerson v. Commissioner,47 T.C. 340 (1966). However, a nonrecourse debt in which repayment is limited to collateral which is far less valuable than the amount of the debt has no economic substance and will not be acknowledged for tax purposes. Estate of Franklin v. Commissioner,544 F.2d 1045 (9th Cir. 1976), affg. 64 T.C. 752 (1975); Rice's Toyota World, Inc. v. Commissioner,81 T.C. 184 (1983), affd. in part, revd. in part 752 F.2d 89 (4th Cir. 1985); Oden'hal v. Commissioner,80 T.C. 588, 604-605 (1983), affd. 748 F.2d 908 (4th Cir. 1984), cert. denied 471 U.S. 1143 (1985); Beck v. Commissioner,74 T.C. 1534, 1552 (1980), *168 affd. 678 F.2d 818 (9th Cir. 1982). Nonetheless, we cannot conclude that the long-term notes were secured by collateral without sufficient value. Petitioners have not introduced any evidence about the value of the equipment at the time the notes were executed. According to the partnerships' tax opinion, the useful life of the locking stations, locker openings, and boot warmers is only 10 years. Therefore, petitioners contend, the collateral will have no value at the time the notes mature. However, this allegation is inadmissable hearsay and we cannot consider it. We note that the purchase price Snomark paid Ski B is far less the aggregate price paid by Winter-Lock, Mountain Security and the Loshes, but that factor alone does not establish that the selling price was inflated by false debt. Petitioners have failed to introduce any evidence to show that the real value of the locking stations, locker openings and boot warmers was less than the face value of the long-term notes. Where the repayment of a recourse note, according to its terms, is tied to the income stream of an asset which has little intrinsic residual value, the note is considered too contingent and *169 will not be treated as a true debt. Brountas v. Commissioner,73 T.C. 491 (1979), vacated and remanded on other grounds 692 F.2d 152 (1st Cir. 1982), cert. denied 462 U.S. 1106 (1983); Fox v. Commissioner,80 T.C. 972, 1022-1023 (1983), affd. without published opinion 742 F.2d 1441 (2d Cir. 1984); Graf v. Commissioner,80 T.C. 944 (1983). However, the repayment of long-term notes which petitioners received from Winter-Lock and Mountain Security is not tied to income generated by the collateral but, rather, give, by their terms, full recourse against the partnerships for repayment of the principal, although not the accrued interest. According to the terms of the notes, Snomark may proceed against the limited partners individually, to the extent of their legal liability, upon default. It is well established that the labels placed on documents are not dispositive, because the substance must govern the form. Gregory v. Helvering,293 U.S. 465 (1935); Zmuda v. Commissioner,731 F.2d 1417 (9th Cir. 1984), affg. 79 T.C. 714 (1982). However, petitioners *170 have not offered any evidence that the substance of the long-term notes differs from their form. Based on the record before us, we cannot conclude that the long-term notes will not, in fact, be paid when due. Furthermore, each of the limited partners signed a statement making himself personally liable for the debts of the partnership and petitioners signed affidavits for the California Franchise Tax Board in which they promised to pursue repayment. Without more evidence supporting petitioners' claims that the long-term notes will not be paid, we cannot conclude that they appear, by their terms, to be illusory or contingent. Petitioners argue that the entire transaction was tax motivated and that none of the documents are meaningful. Nonetheless, on the face of it, the long-term notes convey full recourse against the partnerships and the Loshes, assuring that petitioners will ultimately be paid. Petitioners also argue that in 20 years some of the limited partners might have died or moved away and be difficult to find. However, these are problems that petitioners share with all long-term creditors. The clear tax advantages and obscure economic motivation inherent in the transactions *171 herein is not lost on us. The arrangements between Snomark and Winter-Lock, Mountain Security and the Loshes do manifest some of the typical factors often found in tax sheltered investments. However, petitioners have wholly failed to show that the arrangement was tax motivated, without economic substance and not worthy of our consideration. Additionally, the affidavits which petitioners submitted to the California Franchise Tax Board stated their belief in the validity of the very notes they are attacking here. Furthermore, Jones allegedly masterminded this entire transaction and petitioners were in full complicity and agreement with him. If petitioners are to be hanged it is on a scaffold of their own making. Petitioners next argue that the open transaction doctrine applies in this case because the long-term notes received by Snomark are insusceptible to valuation. Where the fair market value of property received cannot be ascertained, the transaction is considered to be open until such time as valuation is possible. Burnet v. Logan,283 U.S. 404 (1931); Waring v. Commissioner,412 F.2d 800 (3d Cir. 1969), affg. a Memorandum Opinion of this *172 Court. However, it is only in rare and exceptional cases when property cannot be valued. Estate of Meade v. Commissioner,489 F.2d 161, 163 (5th Cir. 1974), cert. denied 419 U.S. 882 (1974); Slater v. Commissioner,356 F.2d 668 (10th Cir. 1966), affg. a Memorandum Opinion of this Court; Weigl v. Commissioner,84 T.C. 1192, 1223 (1985). Furthermore, where a promise to pay is speculative or contingent on unknown facts and circumstances, the obligation may have no ascertainable value. Estate of Weeden v. Commissioner,685 F.2d 1160, 1161 (9th Cir. 1982). The burden of proving that the property cannot be valued is on petitioners. McCormac v. United States,424 F.2d 607, 619 (Ct. Cl. 1970). In McShain v. Commissioner,71 T.C. 998 (1979), we considered a second mortgage which the taxpayer obtained to finance the purchase of a leasehold interest in a hotel. The taxpayer's expert witness pointed to several factors which adversely affected the collectibility of the note. These factors included, inter alia, the hotel's prior net losses and insubstantial cash flow which was *173 insufficient to provide payments for the first mortgage, much less the second; a mortgage term that was unusually long and bore an unusually low interest rate; the lack of security or guarantee for the note; the fact that the fair market value of the collateral was not enough to cover both mortgages and the note's lack of marketability. If any of these or similar factors exist in the situation before us, petitioners have failed to inform us. There was no evidence offered of the real value of the equipment sold by Snomark nor of unusual circumstances surrounding the financing which would indicate the buyer's inability or unwillingness to pay. The source of repayment was not tied to income generated by the equipment. On the contrary, the terms of the long-term notes manifest that if the collateral proves to be insufficient to provide full repayment, petitioners may address themselves to the limited partners. The case at hand is thus completely distinguishable from the situation in McShain v. Commissioner, supra.
Petitioners have not demonstrated that the long-term notes are incapable of valuation. The notes purport to convey to petitioners an inviolable future *174 right to recover the full proceeds and petitioners have not introduced any contradictory evidence. Although petitioners allege on brief that the entire transaction was tax motivated and the limited partners always intended to walk away from their illusory obligations, petitioners have not introduced any proof to support that assertion. Thus, we conclude that the open transaction doctrine is inappropriate for these particular facts and circumstances. The second issue for our consideration is whether petitioners are required to include in income their proportionate shares of $ 468,500 received by Snomark from the partnerships for organizing and promoting them. Section 709 prohibits a partner or a partnership from claiming a deduction for any amounts paid to organize a partnership or to promote the sale of partnership interests. Respondent argues that because section 709 precludes the partnerships from claiming deductions for the expenses of organization and promotion, the partnerships attempted to circumvent section 709 by deducting commissions paid to Snomark for those expenses. Snomark then claimed deductions for the same costs as business expenses. However, because section *175 709 by its terms is only applicable to partnerships, it does not apply to Snomark, a Subchapter S corporation, and its shareholders. Furthermore, neither Hoffman nor Landry are partners in either Winter-Lock or Mountain Security and thus, they are not included within the purview of section 709. Respondent also argues that costs associated with Snomark's efforts to organize and promote Winter-Lock and Mountain Security are not ordinary and necessary business expenses and cannot be deducted by Snomark's shareholders. Section 162 allows a deduction for reasonable business expenses which are both ordinary and necessary. Deductible business expenses include "ordinary and necessary expenditures directly connected with or pertaining to the taxpayer's trade or business." Sec. 1.162-1(a), Income Tax Regs. Whether an expense is ordinary or necessary is a question of fact. Commissioner v. Heininger,320 U.S. 467, 475 (1943); Walliser v. Commissioner,72 T.C. 433, 437 (1979). Ordinary has been interpreted to mean that an expense must have a reasonably proximate relationship to the operation of the taxpayer's trade or business. Deputy v. du Pont,308 U.S. 488, 495-496 (1940); *176 Challenge Manufacturing Co. v. Commissioner,37 T.C. 650, 660 (1962). Necessary has been interpreted to mean that the expense must be " appropriate" or "helpful" to the taxpayer's trade or business. Commissioner v. Heininger, supra at 471; Carbine v. Commissioner,83 T.C. 356, 363 (1984), affd. 777 F.2d 662 (11th Cir. 1985). Where an expenditure is, by its nature, ordinary and necessary, but is unreasonable in amount, only the reasonable portion qualifies for a deduction under section 162. United States v. Haskel Engineering & Supply Co.,380 F.2d 786, 788-789 (9th Cir. 1967). Petitioners stipulated that the expenses in question were devoted to the organization and promotion of the limited partnerships although, at trial, Hoffman testified that the payment he received constituted salary. Hoffman stated that he and Landry secured leases for the equipment, investigated new possible buyers for the equipment and handled the various administrative matters which arose, while Jones raised the capital. However, we do not find Hoffman's testimony credible. The expenses were characterized as commission expenses *177 on Snomark's tax return and petitioners have not shown that the sums were included in income as salary by either Hoffman or Landry. Petitioners failed to establish that Hoffman performed services which merited a salary of about $ 150,000. Hoffman's story comes late in the game and is not consistent with any of petitioners' prior positions on this matter. We are not required to believe a taxpayer's uncorroborated self-serving testimony and we decline to believe Hoffman. Geiger v. Commissioner,440 F.2d 688 (9th Cir. 1971), affg. a Memorandum Opinion of this Court, cert. denied 404 U.S. 851 (1971). We conclude that the expenses associated with the formation and promotion of Winter-Lock and Mountain Security were not ordinary and necessary business expenses. Snomark was not in the trade or business of organizing limited partnerships. It is not routine business practice to create and organize your customers. Petitioners completely failed to show why the organization of Winter-Lock and Mountain Security was ordinary or necessary to the business of selling ski lockers, locker openings and boot warmers. We find that petitioners have not met their burden *178 of proof. The third issue for our consideration is whether petitioners Albert and Bonnie Landry were entitled to claim a deduction for expenses associated with their investment in Federal Investments Partnership in the amount of $ 146,012 in the taxable year 1979. At trial, respondent agreed to permit the Landrys to deduct any out-of-pocket expenses which they could substantiate and petitioners produced a check issued in the amount of $ 15,200. This issue is thus settled by agreement among the parties and petitioners failed to argue it further at trial or on brief. We conclude, thus, that the Landrys improperly claimed a deduction in the amount of $ 130,812 for taxable year 1979. In the fourth and final issue we must consider whether respondent's determination of additions to tax under section 6653(a) for petitioners Albert and Bonnie Laundry is correct. Neither respondent nor petitioners ever mentioned this addition to tax again either at trial or on brief. However, in the absence of evidence that the parties have agreed to a settlement of this issue we hold that petitioners have failed to meet their burden of proving that respondent's determination should not be sustained. *179 Rule 142(a). Thus, we conclude that petitioners have failed to establish that Snomark is entitled to use the cash basis method of accounting and, as an accrual basis entity, must include the full face value of all the short-term and long-term notes received from Winter-Lock, Mountain Security and the Loshes in income for the taxable year 1979. Furthermore, the commission expenses which petitioners deducted and which represented costs associated with the organization and promotion of Winter-Lock and Mountain Security are disallowed. Petitioners Albert and Bonnie Landry improperly claimed a deduction for the costs associated with their investment in Federal Investment Partnerships above their out-of-pocket costs. Finally, petitioners Albert and Bonnie Landry are liable for an addition to tax for negligence for the taxable year 1979. In light of the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Partnership income includes various other less significant sources of income.↩
3. Petitioners never addressed the doubtful collectibility of the long-term notes issued by the Loshes but directed their arguments exclusively to the long-term note of the limited partnerships. Thus, we conclude petitioners have conceded that the Loshes' long-term note is collectible and thus passes the all events test of section 1.451-1(a), Income Tax Regs.↩