79 F.3d 1166
 77 A.F.T.R.2d 96-1434, 96-1 USTC P 60,227
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
June B. WRONA and Elaine B. Bichy, Personal Representatives
of the Estate of Harry J. Banachowski, Plaintiffs-Appellants,
v.
The UNITED STATES, Defendant-Appellee.
 No. 95-5112.
 United States Court of Appeals, Federal Circuit.
 March 6, 1996.
 
 Before RICH, MICHEL, and PLAGER, Circuit Judges.
 MICHEL, Circuit Judge.
 
 DECISION
 
 1
 June Wrona and Elaine Bichy, personal representatives of the estate of Harry Banachowski, appeal from the December 16, 1994 order of the United States Court of Federal Claims, No. 92-482 T, denying them recovery in their tax refund suit. The trial court entered judgment on May 1, 1995, after which this appeal timely followed. The appeal was argued on February 2, 1996. Because the trial court's finding regarding the fair market value of the asset in question is neither clearly erroneous nor tainted by legal error, we affirm.
 
 DISCUSSION
 
 2
 Harry Banachowski died testate on November 12, 1988. At the time of his death he owned, inter alia, an undivided 67% interest in a leasehold on a parking garage. Under the terms of the lease, Banachowski and his son enjoyed the right to operate a parking garage business in the leased area for a term of 30 years, from November 1974 through October 2004. The two were operating this parking garage business together through an informal association at the time of Banachowski's death. In a report dated September 4, 1987, Anthony Reynolds, an appraiser, estimated the leasehold's fair market value to be $425,000 as of October 31, 1987.
 
 
 3
 Wrona and Bichy, Banachowski's daughters, were appointed personal representatives of his estate. In January 1989, they received an offer from the Oliver Carr Co. to purchase the remainder of the leasehold for $2,225,000, to be paid over 15 years without interest. By letter dated April 12, and over the signatures of Wrona, Bichy, Banachowski's son, and the estate's counsel, Wrona and Bichy made a counteroffer to sell the leasehold for $400,000 down plus $2,350,000, the latter to be paid over 10 years without interest. In July, after further negotiations, the Oliver Carr Co. made a second written offer to purchase at $2,625,000, to be paid over 15 years without interest. Despite these negotiations, the sale never occurred.
 
 
 4
 Pursuant to their responsibilities as the personal representatives of Banachowski's estate, and while the Oliver Carr Co.'s second offer to buy was still outstanding, Wrona and Bichy filed a federal estate tax return. On Schedule F of that return, they reported the value of Banachowski's interest in the leasehold as $650,249.44, explaining that "[t]he Estate and the other owners have negotiated tentatively a sale of the lease for $2,625,000 to be paid over a period of 15 years without interest," as a result of which "the present value of the periodic payments to be received is $1,463,061.25" and "[t]he 4/9ths[1] interest of the decedent is accordingly being reported at $650,249.44." They amended the return a month later, reporting an upward adjustment--from 4/9ths to 1/2--in Banachowski's share of the property; the base value reported in the first return (i.e., $1,463,061.25) remained the same.
 
 
 5
 After reviewing the return and the amendment, the IRS determined that (a) Banachowski had owned a 67% share in the leasehold, (b) the value of the leasehold was $1,403,836.67,[2] and (c) additional taxes were due on the increase in value of Banachowski's share of the leasehold. Wrona and Bichy paid the additional taxes while reserving the right to file for a refund at a later date.
 
 
 6
 On March 11, 1991, Wrona and Bichy sold the estate's interest in the leasehold to Banachowski's son, i.e., their brother. Based on the price of this 1991 sale, the value of Banachowski's share of the property would have been approximately $280,000 in 1988. Four months later, the estate filed a claim for a refund with the IRS on the ground that the fair market value of the leasehold had been overstated. Specifically, according to the refund claim, the total value of the leasehold at the time of death was $425,000, the estimate from Reynolds' 1987 report. The value of the 67% share was, as a result, $284,750, an amount close to the estimate calculated by using the 1991 sale price as a baseline.
 
 
 7
 Because the IRS failed to act on the refund claim within six months, Wrona and Bichy brought suit for the refund in the Court of Federal Claims. The court tried the case on December 13 and 14, 1994, the only fact at issue being the fair market value of the leasehold at the time of Banachowski's death. The court heard testimony from, inter alia, Reynolds, Wrona and Bichy's valuation expert, and John Ohanian, the government's expert. The government contended throughout the proceeding that the value of the leasehold reported on the estate's amended 1989 return should be sustained by the court. In other words, the government did not attempt to establish a different value for the leasehold apart from the one used by the IRS; instead, it sought to bolster the trial court's confidence in the correctness of that valuation by introducing expert testimony corroborative of it.
 
 
 8
 The trial court rendered a decision on the question of valuation from the bench on December 16, 1994. The court found that, although both of the expert witnesses "possessed outstanding credentials ... the valuation methodology presented by each ... embodied serious flaws." Rejecting the analyses of both experts, the trial court concluded that "[p]laintiffs have not shown that the amount assessed by the IRS is erroneous. Accordingly, plaintiffs are not entitled to a refund of the estate tax, with respect to the lease and garage operation...."
 
 
 9
 We review the trial court's determination of an asset's fair market value under the "clearly erroneous" standard. Krapf v. United States, 977 F.2d 1454, 1458 (Fed.Cir.1992). As the Supreme Court has noted, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985).
 
 
 10
 Wrona and Bichy first contend that "[t]he trial court erroneously failed to find that the possibility of a substantial [monetary] penalty [for underreporting the leasehold's value] was a material consideration in the [sic] determining the value to be reported for the leasehold interest." The government responds that the penalty for understatement of value could only have been imposed if the IRS (and, thereafter, the courts) determined that the reported value should have been higher. According to the government's reasoning, Wrona and Bichy's decision to use the value at the center of the Oliver Carr Co.'s then-pending offer to purchase thus demonstrates that, at the time they filed the return, they believed that the price in the offer might well be an accurate one. While the government's approach is plausible, we need not accept it to reject Wrona and Bichy's contention. The weight, if any, to be given to a taxpayer's explanation of why a particular value was reported on a return is a matter uniquely within the purview of the trial court. Waring v. Commissioner, 412 F.2d 800, 801 (3d Cir.1969). We discern no reversible error in the trial court's decision to discount the "penalty avoidance" motive the claimants proffered to explain the alleged overreporting of the leasehold's value in 1989.
 
 
 11
 Wrona and Bichy next contend that "it was error for the trial court to find a fair market [value] for the lease that exceeded by $86,000 the highest value contended for by the parties." This contention, proceeding as it does from a false premise, must fail. The government has maintained throughout these proceedings that the valuation used by the IRS should be sustained. As we noted above, the valuation presented by Ohanian was an effort at corroboration, not an effort to prove a new value that the trial court should substitute for that used by the IRS. The fact that the trial court sustained the IRS determination when such was in excess of the several values presented by expert witnesses is not reversible error.
 
 
 12
 Wrona and Bichy also contend that "the trial court should have determined the value of the leasehold here involved from the exhibits and the other testimony in the record even if the testimony of the expert witnesses was not accepted." Specifically, they point to documentary evidence of the 1991 sale of the leasehold to their brother, as well as Ohanian's testimony that the 1991 price put the 1988 value of Banachowski's share of the leasehold at about $280,000, as strong evidence of the correctness of the fair market value they have claimed in their refund suit. This contention betrays a flawed understanding of our highly deferential standard of review of the trial court's findings of fact. To prevail on appeal, Wrona and Bichy must demonstrate that their version of the facts is the only permissible one, for if it is one among a number of permissible versions the trial court's "choice [among] them cannot be clearly erroneous." Anderson, 470 U.S. at 574. They have not.
 
 
 13
 Finally, Wrona and Bichy contend that the trial court gave improper weight to the presumption of correctness that the IRS's determination enjoys. They also dismiss the government's response, a detailed discussion of the nature of the presumption of correctness in relation to the burdens of coming forward and of persuasion, as "no help." According to Wrona and Bichy, "[we] agree that [we] must carry the burden of proof, and [we] believe that the evidence in this case clearly meets [our] burden." Like the previous contention, this argument demonstrates no more than that a finding in Wrona and Bichy's favor would have been sustainable on appeal. The adverse finding is, however, no less sustainable, inasmuch as it amounts to one of a number of plausible views of the evidence.
 
 
 
 [1]
 At the time, the estate maintained that Banachowski had held a 4/9ths interest. The trial court found, and all parties now agree, that he owned a 67% interest
 
 
 [2]
 The record contains no explanation for this $59,224.38 downward adjustment by the IRS to the total value of the leasehold; the parties did not, however, contest it at trial or on appeal