T.C. Memo. 2002-279

UNITED STATES TAX COURT

WILLIAM AND SHIRLEY PRATT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12271-99.                    Filed November 6, 2002.

William Pratt, pro se.

<u>Fred E. Green, Jr.</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, <u>Judge</u>:  In a statutory notice of deficiency dated April 8, 1999, respondent determined deficiencies in petitioners' Federal income tax, additions to tax pursuant to sections 6651(a)(1), and penalties pursuant to 6662(a), as follows:

| Year | Deficiency | Additions to Tax Sec. 6651(a)(1) | Penalty Sec. 6662(a) |
|------|-----------|----------------------------------|----------------------|
| 1993 | $40,764 | $10,191 | $8,153 |
| 1994 | 55,887 | 13,972 | 11,177 |
| 1995 | 288,098 | 71,855 | 57,620 |

All section references are to the Internal Revenue Code for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are: (1) Whether for 1995 petitioners are entitled to the amount of cost of goods sold reported on Schedule C, Profit or Loss From Business; (2) whether for 1993, 1994, and 1995 petitioners are entitled to Schedule C expense deductions in excess of those amounts allowed by respondent; (3) whether petitioners are liable for self-employment taxes; (4) whether petitioners are liable for additions to tax under section 6651(a)(1) for 1993, 1994, and 1995; and (5) whether petitioners are liable for the section 6662(a) accuracy-related penalty for the substantial understatement of income tax as provided in section 6662(b)(2) for 1993, 1994, and 1995.

Additional adjustments made by respondent to petitioners' exemptions, itemized deductions, and self-employment taxes are computational and will be resolved by our holdings with respect to the aforementioned issues.

## FINDINGS OF FACT

Background

Some of the facts have been stipulated and are so found.[1] The stipulation of facts and the exhibits submitted therewith are incorporated herein by this reference.

Petitioners William and Shirley Pratt are husband and wife. At the time the petition was filed, petitioners resided in Desert Hot Springs, California.

William Pratt (petitioner) has a tenth-grade education. After leaving school, petitioner went to Korea for an unspecified period. Upon his return from Korea, petitioner became involved in sheet metal work.

Petitioner owned and operated a sheet metal business under the name Dormer & Louver of Nevada (Dormer & Louver) in North Las Vegas, Nevada. Dormer & Louver manufactured gable vents. During the years at issue, petitioner employed three to five employees, depending upon the amount of business. Mrs. Pratt worked in the office of Dormer & Louver when the business first started; she was a homemaker during the years at issue.

Petitioner turned over all of his business records, including the checkbook, check stubs, and receipts, for Dormer & Louver to

---

[1] Shirley Pratt neither signed the stipulation of facts nor appeared at trial. The case with respect to her will be dismissed for lack of prosecution, and the decision with respect to her will be consistent with the decision entered with respect to William Pratt.

his accountants. Consequently, petitioner did not know "what the rent was, how much was paid [for] materials, supplies, and stuff" with regard to the financial operations of the company.

Federal Income Tax Returns

Petitioners filed joint Federal income tax returns for 1993, 1994, and 1995. Dormer & Louver was operated as a sole proprietorship; for Federal income tax purposes, the income and expenses of the business were reported on Schedule C, Profit or Loss From Business (Sole Proprietorship). On the Schedules C, petitioner described the principal business of Dormer & Louver as "MANUFACTURING CONSTRUCTION MATERIALS".

Petitioners failed to file their 1993-95 tax returns timely. They did not request extensions of time to file their income tax returns for any of these years.

On an undisclosed date in 1996, petitioners filed for bankruptcy. Petitioners filed joint income tax returns for 1993-95 after they filed for bankruptcy.

Petitioners' joint returns for 1993 and 1994 were prepared by Accufast Business Services, Inc. (Accufast), of Palmdale, California. The 1993 and 1994 returns were signed by Accufast on April 1, 1994, and April 12, 1995, respectively. Both of these returns were signed by petitioners on September 12, 1995. The returns were received by respondent's Ogden/Las Vegas Service Center on September 16, 1996.

The joint return for 1995 was signed by both petitioners and a representative of J.E. & Associates (J.E. & Assoc.), of Las Vegas, Nevada, as tax preparer, on November 18, 1996. The 1995 return was received by respondent's Ogden/Las Vegas Service Center on July 30, 1997.

On the Schedule C attached to their 1993 Federal income tax return, petitioners reported Dormer & Louver's gross receipts to be $244,710, cost of goods sold to be zero, total business expenses to be $237,571, and net profit to be $7,139.

On the Schedule C attached to their 1994 Federal income tax return, petitioners reported Dormer & Louver's gross receipts to be $442,012, cost of goods sold to be zero, total business expenses to be $435,262, and net profit to be $6,750.

On the Schedule C attached to their 1995 tax return, petitioners reported Dormer & Louver's gross receipts to be $1,095,339, returns and allowances to be $454,387, cost of goods sold to be $311,578, total business expenses to be $404,606, and net loss to be $75,232.

Dormer & Louver's gross receipts and business expenses for 1993, 1994, and 1995 were computed using the cash method of accounting.

For tax years 1993-95, respondent determined Dormer & Louver's cost of goods sold and business expenses to be as follows:

1993

| Item | Amount Claimed | Amount Allowed |
|------|----------------|----------------|
| Cost of Goods sold | -0- | -0- |
| Advertising | $106 | $106 |
| Car & truck expenses | 8,298 | 8,298 |
| Insurance | 2,967 | 2,967 |
| Legal & profl. servs. | 3,875 | 3,875 |
| Office expenses | 7,955 | 7,955 |
| Rent[1] | 20,673 | 163 |
| Repairs | 3,766 | 3,766 |
| Supplies | 112,413 | -0- |
| Utilities | 3,612 | 3,612 |
| Wages | 45,753 | 45,753 |
| Other expenses[2] | 28,153 | 28,153 |

[1]  On line 20 of the Schedule C, under "Rent or Lease", petitioners reported two expenses--$163 for vehicles, machinery & equipment expenses and $20,510 for other business property expenses.

[2]  These expenses consisted of $5,055 for payroll taxes, $1,788 for outside services, $206 for bank charges, $366 for freight & delivery, $4,819 for insurance, $608 for postage, $8,771 for shipping/shop supply, $3,766 for telephone, and $2,774 for small tools.

1994

| Item | Amount Claimed | Amount Allowed |
|---|---|---|
| Cost of goods sold | -0- | -0- |
| Advertising | $42 | $42 |
| Car & truck expenses | 6,618 | 6,618 |
| Depreciation | 1,693 | 1,693 |
| Insurance | 3,426 | 3,426 |
| Legal & profl. servs. | 4,452 | 4,452 |
| Office expenses | 8,531 | 8,531 |
| Rent[1] | 21,106 | 596 |
| Repairs | 2,338 | 2,338 |
| Supplies | 131,014 | -0- |
| Taxes & licenses | 14,207 | 14,207 |
| Utilities | 4,116 | 4,116 |
| Wages | 199,428 | 199,428 |
| Other expenses[2] | 38,291 | 38,291 |

[1] On line 20 of the Schedule C, under "Rent or Lease", petitioners reported two expenses--$596 for vehicles, machinery & equipment expenses and $20,510 for other business property expenses.

[2] These expenses consisted of $12,990 for payroll taxes, $2,980 for outside services, $140 for bank charges, $510 for freight & delivery, $550 for fuel, $5,610 for insurance, $710 for postage, $9,680 for shipping/shop supply, $2,080 for telephone, and $3,000 for small tools. These figures are approximate.

1995

| Item | Amount Claimed | Amount Allowed |
|---|---|---|
| Cost of goods sold | $311,578 | -0- |
| Returns & Allowances | 454,387 | -0- |
| Advertising | 3,462 | $3,462 |
| Insurance | 10,809 | 10,809 |
| Legal & profl. servs. | 6,917 | 6,917 |
| Rent[1] | 43,787 | 2,150 |
| Repairs | 8,574 | 8,574 |
| Supplies | 5,203 | 5,203 |
| Taxes & licenses | 23,995 | 23,995 |
| Meals/Entertainment | 2,852 | 2,852 |
| Utilities | 6,442 | 6,442 |
| Wages | 140,376 | 140,376 |
| Other expenses[2] | 152,209 | 152,209 |

[1] On line 20 of the Schedule C, under "Rent or Lease", petitioners reported two expenses--$2,150 for vehicles, machinery & equipment expenses and $41,637 for other business property expenses.

[2] These expenses consisted of $14,306 for payroll taxes, $4,857 for bank charges, $333 for dues & subscriptions, $876 for postage, $2,198 for communication radios, $4,619 for shipping/shop supply, $5,020 for subcontractors, $419 for property taxes, $5,503 for telephone, $30,282 for vehicle expense, $15,558 for SIIS, $61,183 for other taxes, and $7,055 for tool expense.

At an undisclosed date before July 1998, in conjunction with preparing a proof of claim in petitioners' bankruptcy proceeding, respondent commenced an examination of petitioners' 1993-95 income tax returns. Petitioners were notified in writing of proposed changes to their 1993-95 returns (the 30-day letter).[2] The examination of petitioners' returns culminated in respondent's

[2] The 30-day letter was also sent to Thomas E. Crowe, Esq., counsel for petitioners.

issuance of a notice of deficiency to petitioners on April 8, 1999. The adjustments made in this notice are the subject of the present controversy.

Petitioners petitioned the Court for a redetermination of respondent's determinations. The petition was filed on petitioners' behalf by Thomas E. Crowe, Esq. Mr. Crowe withdrew as petitioners' counsel on July 10, 2002, 2 months before the trial in this case was scheduled to begin.

With respect to the returns for 1993 and 1994, petitioner contacted Accufast and was informed that the tax returns for those years were correct. Petitioner requested that Accufast provide him with all records, receipts, or other documentation which he could use to substantiate the expenses claimed on the 1993 and 1994 returns. Accufast, however, could not provide petitioner with the requested documentation because Accufast did not retain clients' records after 5 years. Petitioner believed that the deductions Accufast claimed as reflected on the 1993 and 1994 tax returns were accurate.

In addition, petitioner contacted J.E. & Assoc. for documents it had used in preparing the 1995 return. Petitioner testified that J.E. & Assoc. claimed it had not prepared petitioners' 1995 return. Petitioner sent a copy of the return to J.E. & Assoc. (which showed the return signed by a representative of J.E. &

Assoc.), but no one from that accounting firm replied to petitioner's inquiry.

OPINION

As a general rule, the determinations by the Commissioner in a notice of deficiency are presumed correct, and the burden is on the taxpayer to show that the Commissioner's determinations are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[3]

Deductions are a matter of legislative grace; the taxpayer bears the burden of proving entitlement to all deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

I. Schedule C--Adjustments

A business's income is computed by taking into account its cost of goods sold as well as a variety of expenses. Cost of goods sold reduces (i.e., is subtracted from) gross receipts in determining the business's gross income. Sec. 1.61-3(a), Income Tax Regs. Cost of goods sold is not treated as a deduction from gross income and is not subject to the limitations on deductions contained in sections 162 and 274. Metra Chem Corp. v. Commissioner, 88 T.C. 654, 661 (1987). All amounts claimed as

---

[3] Pursuant to sec. 7491, the burden of proof or of production may be placed on the Commissioner in certain circumstances for audits conducted after July 22, 1998. Sec. 7491 is inapplicable in this case because petitioners' examination commenced before July 22, 1998.

costs of goods, however, must be substantiated, and taxpayers are required to maintain records sufficient for this purpose. Sec. 6001; Newman v. Commissioner, T.C. Memo. 2000-345; Wright v. Commissioner, T.C. Memo. 1993-27; sec. 1.6001-1(a), Income Tax Regs.

Section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." As with cost of goods sold, amounts deducted pursuant to section 162(a) must be substantiated, and records sufficient to establish such deductions must be maintained by the taxpayer. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), affd. 540 F.2d 821 (5th Cir. 1976); see also sec. 1.6001-1(a), (e), Income Tax Regs.

When a taxpayer adequately establishes that he or she has paid or incurred a deductible expense but is unable to fully substantiate it, the Court is permitted, in some circumstances, to determine the amount of the allowable deduction based on an approximation, bearing heavily against the taxpayer whose inexactitude is of his or her own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). There must, however, be sufficient evidence contained in the record to provide a basis for the Court to make an estimate and to conclude that a deductible

expense was incurred in at least in the amount to be allowed.[4] Norgaard v. Commissioner, 939 F.2d 874, 879 (9th Cir. 1991), affg. T.C. Memo. 1989-390; Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Petitioner unsuccessfully attempted to obtain from his accountants the business records of Dormer & Louver, as well as all documents the accountants had used in the preparation of petitioners' 1993-95 tax returns.  Petitioner requested all records, receipts, or other documentation which could substantiate the costs and expenses claimed on the returns.  However, Accufast, the tax return preparer for 1993 and 1994, did not retain clients' records after 5 years, and J.E. & Assoc., the other purported tax return preparer, claimed it had not prepared petitioners' 1995 return and ignored petitioner's inquiry.

---

[4] Sec. 274 requires a taxpayer to substantiate expenses for travel, meals and entertainment, and gifts, and with respect to listed property (as defined in sec. 280F(d)(4) and including passenger automobiles) by adequate records or by sufficient evidence corroborating the taxpayer's own statement establishing the amount, time, place, and business purpose of the expense. Sec. 274(d); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  The sec. 274 rules of substantiation supersede the doctrine of Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., supra.  The expenses and deductions at issue in this case do not fall within those expenses covered by sec. 274.

A.  Gross Receipts and Cost of Goods Sold Reported on Petitioners' 1995 Schedule C

For the tax year 1995, petitioners reported gross receipts from Dormer & Louver in the amount of $1,095,339 and claimed cost of goods sold of $311,578.  At trial, petitioner testified that the $1,095,339 reported on petitioners' 1995 return as gross receipts and the $311,578 reported as cost of goods sold were each a "mistake".  Petitioner further testified "there was no way I could ever earned a million dollars in sales."  Petitioner, however, could not substantiate how the $311,578 claimed as cost of goods sold was calculated.  He testified that he provided the accountants with the business records, checkbook, stubs, and receipts and that he relied on his accountants in the preparation of the 1995 tax return.  Petitioner asserted that he never looked at the 1995 return; rather, he testified that he "signed it and off it went".

Statements made on a tax return signed by the taxpayer have long been considered admissions, and such admissions are binding on the taxpayer, absent cogent evidence indicating they are wrong. Waring v. Commissioner, 412 F.2d 800, 801 (3d Cir. 1969), affg. T.C. Memo. 1968-126; Lare v. Commissioner, 62 T.C. 739, 750 (1974), affd. without published opinion 521 F.2d 1399 (3d Cir. 1975); Rankin v. Commissioner, T.C. Memo. 1996-350, affd. 138 F.3d 1286 (9th Cir. 1998).

Other than petitioner's blanket renunciation of the amount of gross receipts reported on the return, there is nothing in the

record to substantiate petitioner's claim that Dormer & Louver's 1995 gross receipts were overstated.  Moreover, petitioner did not testify or offer any other evidence as to the cost of goods sold. Thus, we are unable to estimate with a degree of reliability the amount of Dormer & Louver's cost of goods sold for 1995.  Because of petitioner's inexactitude, we sustain respondent on this issue.

    B.  <u>Schedule C Business Expense Deductions for 1993, 1994, and 1995</u>

        1.  <u>Rent Expenses</u>

Petitioners claimed rent expenses of $20,510 for 1993, $20,510 for 1994, and $41,637 for 1995.

With respect to the rent expenses of $20,510 for 1993 and $20,510 for 1994, petitioner testified that he believed these figures were accurate.  Petitioner's testimony was not sufficient to enable us to estimate the rent expenses.  Indeed, petitioner did not even testify as to whether rent was actually paid, nor did he identify the lessor, the amount of rent, or the rental period. Morever, petitioner disputed the claimed $41,637 rent expense for 1995 and in general, testified that the 1995 return was "blown out of proportion."  Again, because petitioner presented no evidence, documentary or otherwise, to substantiate the rent expenses, we sustain respondent's determinations on this issue.

        2.  <u>Supplies</u>

Petitioners claimed Schedule C expenses for supplies in the amounts of $112,413 for 1993, $131,014 for 1994, and $5,203 for

1995. Respondent disallowed the $112,413 and $131,014 deductions for 1993 and 1994, respectively, on account of a lack of substantiation as well as petitioners' failure to establish that the expenses were ordinary and necessary.

At trial, petitioner failed to present any evidence, documentary or otherwise, to substantiate the claimed supply expenses. Consequently, we sustain respondent's position on this issue.

### 3. Returns and Allowances for 1995

Petitioner claimed Schedule C returns and allowances for the tax year 1995 in the amount of $454,387. Respondent disallowed the deduction and adjustment on account of petitioner's lack of substantiation.

Again, at trial, when asked if he had anything to substantiate his returns and allowances for 1995, petitioner stated "I just don't have a thing." Petitioner presented no evidence to substantiate entitlement to the amounts claimed. Again, we must sustain respondent's determination on this issue.

### 4. Conclusion

Petitioners failed to substantiate any of the amounts claimed on the Schedules C that were disallowed in the notice of deficiency. Instead of providing documentary evidence to attempt to substantiate the amounts claimed, petitioner chose to rely solely on his testimony. Petitioner did not call as witnesses the

accountants who prepared the income tax returns or the attorney who represented petitioners until 2 months before trial.

In order for the Court to estimate the amount of a deductible expense, we must have some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. at 743. Here, there is no such basis, and were we to nonetheless permit any allowance, such would amount to unguided largess. Williams v. United States, 245 F.2d at 560. Although we are sympathetic with petitioner's plight, the fact remains that petitioner failed to present even a modicum of evidence to substantiate the disallowed deductions.

## II.  Self-Employment Taxes

Respondent determined that petitioners are liable for self-employment tax of $10,893 for 1993, $11,753 for 1994, and $27,203 for 1995.

Petitioner was self-employed during each of the years at issue. He reported the income and expenses of his business on a Schedule C. Petitioner presented no evidence on this issue. We thus hold petitioner is liable for the self-employment tax under section 1401 on his Schedule C earnings for 1993, 1994, and 1995, as determined in the notice of deficiency. Respondent's determination on this issue is sustained.

## III.  Section 6651(a)(1) Additions to Tax

Respondent determined that petitioners are liable for the addition to tax under section 6651(a)(1) as a result of

petitioners' failure to timely file their Federal income tax returns for the years at issue.

Section 6651(a)(1) imposes an addition to tax for failure to file timely a tax return. The addition to tax does not apply if the failure to file is due to reasonable cause and not to willful neglect. Id. If a taxpayer exercised ordinary business care and prudence and was nonetheless unable to file the return within the date prescribed by law, then reasonable cause exists. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. "Willful neglect" means a "conscious, intentional failure or reckless indifference." United States v. Boyle, 469 U.S. 241, 245 (1985).

The addition to tax is equal to 5 percent of the amount of the tax required to be shown on the return if the failure to file is not for more than 1 month. Sec. 6651(a)(1). An additional 5 percent is imposed for each month or fraction thereof in which the failure to file continues, to a maximum of 25 percent of the tax. Id. The addition to tax is imposed on the net amount due. Sec. 6651(b).

Petitioners' tax return for 1993 was due April 15, 1994. The return was prepared, and dated April 1, 1994, by Accufast. However, petitioners did not sign the return until September 12, 1995, more than a year after the return was prepared. Further, they did not file the return until another year later; it was filed on September 16, 1996.

Petitioners' tax return for 1994 was due April 17, 1995. It was prepared and dated April 12, 1995, by Accufast. The return was signed by petitioners on September 12, 1995, and filed a year later on September 16, 1996.

Petitioners' tax return for 1995 was due April 15, 1996. It was prepared and dated November 18, 1996, by a representative of J.E. & Assoc. The 1995 return was signed by petitioners on the same date, but not filed until July 30, 1997.

At trial, petitioner offered no reasonable explanation for petitioners' failure to timely file their 1993 and 1994 Federal income tax returns. When asked why his 1995 Federal income tax return was also filed late, petitioner replied: "Well, I've got no excuse for that. You know, I'll be honest with you."

Petitioners failed to show that they exercised ordinary care and prudence in this case. Accordingly, petitioners are liable for the additions to tax under section 6651(a)(1) for 1993, 1994, and 1995. Respondent's determination on this issue is sustained.

IV. Section 6662(a) Penalty

Pursuant to section 6662(a), a taxpayer may be liable for a penalty of 20 percent on the portion of an underpayment of tax attributable to a substantial understatement of tax. Sec. 6662(b)(1).

The accuracy-related penalty is not imposed with respect to any portion of the understatement as to which the taxpayer acted

with reasonable cause and in good faith.  Sec. 6664(c)(1).  The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Relevant factors include the taxpayer's efforts to assess his proper tax liability, including the taxpayer's reasonable and good faith reliance on the advice of a professional such as an accountant. Id.  Further, an honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge, and education of the taxpayer may indicate reasonable cause and good faith.  See Furnish v. Commissioner, T.C. Memo. 2001-286; Remy v. Commissioner, T.C. Memo. 1997-72.

At trial, petitioner testified that he provided his accountants (Accufast for 1993 and 1994, and J.E. & Assoc. for 1995) with all of his business records, receipts, and check stubs. In this regard, petitioner testified:

> I had an accountant that takes care of all this stuff, so I really don't understand it, don't know what it is.  You know, he had all the records and took care of all that stuff, as far as what the rent was and how much was paid, and the materials, supplies and stuff. * * * As far as * * * the charges and stuff * * * he had the records, the check stubs and all that, and he figured out what was there * * *.

Petitioner further testified that he tried to obtain his business records and any substantiating documentation from Accufast for 1993 and 1994 but was told that clients' records were not retained after 5 years.  Moreover, petitioner stated that upon

contacting J.E. & Assoc. to obtain his records and any substantiating documentation for 1995, he was told that J.E. & Assoc. did not handle petitioner's account in 1995, although the signature of the tax preparer for petitioners' 1995 tax return was that of a representative of J.E. & Assoc. Further attempts by petitioner to reach J.E. & Assoc. proved unsuccessful. In addition, petitioner testified at trial that his counsel, who withdrew 2 months before trial, handled most matters for petitioner.

Although petitioner failed to present either the accountants or his former counsel as witnesses to show that his reliance was reasonable, we found petitioner's testimony in this regard to be credible. Petitioner, through his testimony, demonstrated that he simply had no available documentation to offer to substantiate the claimed expenses.

Petitioner provided all his records to Accufast and believed that the deductions claimed by Accufast as reflected on the 1993 and 1994 tax returns were accurate. It is clear from the record that petitioner is an unsophisticated taxpayer with a limited education who relied reasonably and in good faith on Accufast.

Consequently, we conclude that for 1993 and 1994, petitioner had reasonable cause and acted in good faith as to any underpayment resulting from the deductions in issue. Accordingly, we hold that

petitioners are not liable for the penalty pursuant to section 6662(a) for the years 1993 and 1994.

With respect to 1995, petitioner asserts that his reliance on J.E. & Assoc. was reasonable. We disagree. Petitioner asserted that the figures reflected on petitioners' 1995 tax return were "blown out of proportion". Petitioner testified that although it was "possible" to have gross receipts and expenses in amounts as reflected on petitioners' 1993 and 1994 returns, with respect to petitioners' 1995 return, "jumping up another half a million dollars in one more year, it's impossible." Additionally, petitioner testified that he never examined the 1995 tax return until recently. The 1995 return was signed by petitioners on November 18, 1996. Petitioner stated that his attorney was "handling most of it until him [his attorney] and I parted ways". The colloquy set forth below exemplifies petitioner's testimony on this matter:

> THE COURT: * * * When you saw the return--I know that you have an accountant prepare--
>
> MR. PRATT: I never saw this return until just recently.
>
> THE COURT: Why not?
>
> MR. PRATT: My attorney was handling most of it until him and I parted ways.
>
> THE COURT: Yes, but we're talking about '95.
>
> MR. PRATT: Yes.

THE COURT: In '95, you filed that return sometime in, what, in '96.

MR. PRATT: It says here, in '96.

THE COURT: Right. So, and, normally, you would file a return, by the way, in April.

MR. PRATT: Oh, I understand that, sir.

THE COURT: And here, you filed it not in April, but you filed it in November.

MR. PRATT: November.

THE COURT: And then you just accepted numbers without looking?

MR. PRATT: Well, you know, again, I have to say that, you know, all I did was a guy says, "Here, you've got to get this signed." Or I think it's probably my attorney, "You've got to get this signed and out of here." So I signed it and off it went. I didn't even look at the million dollars until just recently, that Mr. Green [respondent's counsel], here, showed it to me and pointed it out.

Petitioner further testified at trial that with respect to the 1995 return: "As far as I am concerned, he just wrote some numbers down and my accountant probably--I mean my attorney at that time probably said, 'look, you haven't filed that thing'; * * * he probably went back to his office and made one, real quick". Petitioner contends that he simply provided the information to his accountants and that the accountants decided the amount of deductions to which petitioners were entitled. A cursory look at the return would have revealed the large increase in gross receipts reported on the return--gross receipts that petitioner testified

were not accurate. Thus, we find that petitioner did not reasonably rely on J.E. & Assoc.

We conclude that for 1995 petitioner did not have reasonable cause or act in good faith. Accordingly, we hold that petitioners are liable for the penalty pursuant to section 6662(a) for 1995.

We have considered all other arguments made by the parties and find those arguments not discussed herein to be without merit.

To reflect the foregoing,

<u>An appropriate order of dismissal and decision will be entered</u>.