T.C. Summary Opinion 2003-11

UNITED STATES TAX COURT

CALVIN L. EUBANKS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9579-01S.                    Filed February 13, 2003.

Calvin L. Eubanks, pro se.

Caroline R. Krivacka, for respondent.

CARLUZZO, Special Trial Judge:  This case was heard pursuant
to the provisions of sections 6330(d) and 7463 of the Internal
Revenue Code in effect at the time the petition was filed.
Unless otherwise indicated, subsequent references to sections
other than sections 6320 and/or 6330 are to the Internal Revenue
Code of 1986, as amended and in effect for 1992.  Rule references
are to the Tax Court Rules of Practice and Procedure.  The

decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

On July 10, 2001, respondent issued to petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 for unpaid 1992 Federal income tax and related liabilities in the amount of $10,132.48. The issue for decision is whether petitioner is liable for the Federal income tax liability reported on his untimely 1992 Federal income tax return. The resolution of this issue depends upon whether certain income reported on petitioner's 1992 return is includable in petitioner's income for that year.

## Background

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioner resided in Memphis, Tennessee.

Petitioner was one of three incorporators of W.H.Y. Construction Company, Inc. (W.H.Y. or WHY), incorporated in Tennessee on May 12, 1989. W.H.Y. was administratively dissolved by the Secretary of State of Tennessee on February 15, 1991, because the corporation failed to file a report required by Chapter 16 of the Tennessee Business Corporation Act. While in existence, W.H.Y. was involved in residential construction and renovations.

Petitioner was associated with or employed by W.H.Y., and performed what he describes as "quality control" services. Petitioner's relationship to W.H.Y. during 1992 is less than certain because, as noted, the corporation had been dissolved the previous year.

During 1992, petitioner was involved with a renovation project for a house that had been damaged by fire. The cost of some or all of the renovations was paid by State Farm Fire and Casualty Company (State Farm). In connection with the renovations, State Farm issued a check for $18,587 payable to petitioner "DBA WHY Construction", which payment was reported on a Form 1099-MISC, Miscellaneous Income. Dunn Construction Company (Dunn) also issued a Form 1099-MISC reflecting a payment of $16,125 to petitioner for 1992. No other background information regarding this latter payment is included in the record. The above-referenced Forms 1099-MISC issued by State Farm and Dunn are subsequently referred to as the Forms 1099.

Apparently, respondent received the information reported on the Forms 1099 but had no record of petitioner's 1992 Federal income tax return. Sometime during 1998, a revenue officer employed by respondent's Collection Division contacted petitioner. After discussing the situation with petitioner and confirming that petitioner had not previously filed a 1992 Federal income tax return, the revenue officer prepared

petitioner's 1992 return based in part upon the information reported on the Forms 1099 and other information provided by petitioner.

Ultimately, petitioner's 1992 Federal income tax return was filed on August 12, 1998. The return includes a Schedule C, Profit or Loss From Business, on which the following items are reported:

| | |
|---|---:|
| Income | $34,712 |
| Expenses: | |
| Car and truck | 3,000 |
| Rent or lease | 4,000 |
| Repairs, etc. | 3,000 |
| Supplies | 1,000 |
| Net profit | 23,712 |

The income reported on the Schedule C represents the sum of the amounts reported on the Forms 1099. No other income is reported on petitioner's 1992 return. The net profit reported on the Schedule C is treated as net earnings from self-employment. The Federal income tax liability of $5,769 reported on the return consists of a section 1 income tax liability of $2,419 and a $3,350 section 1401 tax on self-employment income. The section 1 income tax liability takes into account petitioner's filing status as single, a personal exemption deduction, the appropriate standard deduction, and a deduction for one-half of the section 1401 tax.

Petitioner did not pay the tax liability reported on his 1992 return. Based upon the liability reported on the return, which does not include interest, additions to tax, or penalties, petitioner and the revenue officer agreed to an installment payment schedule at the time the return was prepared. The terms of the installment agreement are unclear, but it appears that petitioner originally agreed to pay $100 per month toward his outstanding 1992 Federal income tax liability. We cannot tell with any degree of certainty when the installment payments began or ended, but as of the date of trial, petitioner had paid $2,514 towards his outstanding 1992 income tax liability.

On September 8, 2000, respondent issued to petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (the notice of lien). According to the notice of lien, petitioner's then-outstanding liability for 1992 Federal income tax and related items totaled $10,132.48. Petitioner timely submitted Form 12153, Request for Collection Due Process Hearing. Petitioner stated in this request that he disagreed with the underlying liability because the liability in dispute was computed taking into account income that he neither earned nor received; namely, the income reported on the Form 1099 issued by State Farm. Petitioner's administrative hearing was held on February 13, 2001. During the hearing, petitioner reiterated his challenge to the underlying liability. He did not raise any

issues regarding alternative collection activity.

Discussion

Issues that may be raised by a taxpayer at a section 6330(d) administrative hearing are prescribed by statute, and include, as relevant here, a challenge to the existence or amount of the underlying tax liability if the taxpayer did not receive a statutory notice of deficiency or did not otherwise have an opportunity to dispute the underlying tax liability.  See sec. 6330(c)(2)(A) and (B); Kennedy v. Commissioner, 116 T.C. 255, 260 (2001).  If the validity of the underlying tax liability is at issue, our review of respondent's determination with respect to that liability is de novo.  See Sego v. Commissioner, 114 T.C. 604, 609-610 (2000).

In this case, we focus our attention on petitioner's challenge to the amount of his 1992 Federal income tax liability, as reported on his 1992 Federal income tax return,[1] as he has raised no other issues either at the section 6330(d) administrative hearing or before this Court.  See Rule 331(b)(4); Pierson v. Commissioner, 115 T.C. 576, 580 (2000).  We further limit our focus to the income reported on the Form 1099 issued by

_____

[1] Under the circumstances of this case, we decline to consider whether the manner in which petitioner's 1992 Federal income tax return was prepared and filed provided him with an opportunity to dispute the underlying tax liability reported on that return.  See Horn v. Commissioner, T.C. Memo. 2002-207; Young v. Commissioner, T.C. Memo. 2003-6.

State Farm, as petitioner has never challenged the income reported on the Form 1099 issued by Dunn.[2]

According to petitioner, he was surprised when he received the notice of lien that indicated his 1992 liability exceeded $10,000. He now claims that he only agreed to the income and tax reported on his 1992 return because he was under the impression that the liability reported on the return constituted his entire liability for that year. As noted, the liability reported on his 1992 return does not include interest, additions to tax, or penalties. The liability reflected in the notice of lien does.

Petitioner claims that he only agreed to report the income shown on the Form 1099 issued by State Farm because he thought that he could afford to pay the resultant Federal income tax liability through the installment agreement. He claims that respondent, in effect, violated the terms of the installment agreement by subsequently demanding a higher monthly payment than originally agreed.

Petitioner now takes the position that the income reported on the Form 1099 issued by State Farm was actually paid to W.H.Y. He admits that he received the check, but claims that he turned it over to officials of W.H.Y. He further claims that he did not

---

[2] Petitioner argued at trial that he was not required to file a 1992 Federal income tax return because of the amount of income he earned during that year. Even were we to consider only the uncontested income reported on the Form 1099 issued by Dunn, this argument would fail. See sec. 6012(a).

and could not have negotiated the check.  According to petitioner, because respondent failed to rebut this contention by producing the relevant canceled check from State Farm, the income is not includable in his 1992 income.  We disagree.

We consider it significant that the income now in dispute was originally reported on petitioner's 1992 return.  Although the circumstances surrounding the preparation and filing of that return are less than routine, we are not persuaded that the items of income shown on petitioner's return are incorrect and reported out of convenience, rather than correct and reported as required.  "Statements made on a tax return signed by the taxpayer have long been considered admissions, and such admissions are binding on the taxpayer, absent cogent evidence indicating they are wrong."  Pratt v. Commissioner, T.C. Memo. 2002-279 (citing Waring v. Commissioner, 412 F.2d 800, 801 (3d Cir. 1969), affg. T.C. Memo. 1968-126; Lare v. Commissioner, 62 T.C. 739, 750 (1974), affd. without published opinion 521 F.2d 1399 (3d Cir. 1975); Rankin v. Commissioner, T.C. Memo. 1996-350, affd. 138 F.3d 1286 (9th Cir. 1998)).  Disregarding petitioner's self-serving and uncorroborated testimony on the point, see Niedringhaus v. Commissioner, 99 T.C. 202, 212 (1992), we find no cogent evidence that petitioner erroneously included in his 1992 income the income reported on the Form 1099 issued by State Farm.

Petitioner admits to having received the check from State Farm, and the check is made payable to him. Furthermore, he admits that he performed services (albeit as he views the matter, as an employee of W.H.Y.) that generated the issuance of the payment. Looking at the return itself, it is obvious that some negotiation occurred between petitioner and the revenue officer who prepared petitioner's return. For example, the expenses deducted on the Schedule C appear to be estimates that could be based only upon information provided to the revenue officer by petitioner. Petitioner no doubt had an incentive to sign and file the return based upon the expense deductions allowed and his expectation that the liability reported on the return could be paid through a manageable installment agreement. Nevertheless, we think it unlikely that petitioner would have agreed to report on his return any income that he did not consider to be his,[3] and we are not persuaded by his presentation at trial that he did.

The record does not establish that the Federal income tax liability reported on petitioner's 1992 return is overstated. It follows that respondent's determination to proceed with collection of that liability should be sustained and we so hold.

---

[3] Although we do not consider the point, we cannot help but wonder whether, under circumstances such as presented in this case, sec. 6404(b), which precludes a taxpayer from filing a claim for abatement for certain Federal taxes, has been rendered inoperative by the provisions of sec. 6330.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered for respondent</u>.